**RISK MANAGERS INTERNATIONAL, INC., Herschel Hancock, Individually and as Officer of Risk Managers International, Inc. and Corporate Underwriters, Ltd., Appellants,**

v.

**The STATE of Texas and the State Board of Insurance, Appellees.**

No. 3–93–022–CV.

Court of Appeals of Texas, Austin.

July 7, 1993.

Rehearing Overruled Aug. 25, 1993.

Hector DeLeon, DeLeon & Boggins, Austin, for Corporate Underwriters, Ltd.

Dan Morales, Atty. Gen., Linda Shaunessy, Asst. Atty. Gen., Austin, for appellees.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

KIDD, Justice.

Risk Managers International, Inc. ("Risk Managers"); Herschel Hancock, individually and as officer of Risk Managers;[1] and Corporate Underwriters, Ltd. (collectively "Appellants") appeal the judgment of the district court granting a permanent injunction in favor of the State of Texas and the State Board of Insurance that prohibited Appellants from engaging in the unauthorized business of insurance in Texas. We will affirm the judgment of the district court.

## BACKGROUND

In 1989, the State Board of Insurance began investigating Appellants[2] to determine if they were engaging in the business of insurance in Texas without specific statutory authorization. *See* Tex.Ins.Code Ann. art. 1.14–1, § 3 (West Supp.1993).[3] In September 1989, the State of Texas (the "State") brought suit against Appellants[4] seeking: (1) temporary and permanent injunctions enjoining Appellants from engaging in the unauthorized business of insurance in Texas; (2) payment of premium taxes; (3) penalties for engaging in the unauthorized business of insurance; (4) payment of claims arising under the insurance contracts issued by Corporate Underwriters in Texas (restitution); and (5) attorney's fees and court costs. The State also applied for and obtained a temporary restraining order prohibiting Appellants from conducting the unauthorized business of insurance in Texas and an order appointing a temporary receiver.

Appellants moved to dissolve both the temporary restraining order and the temporary receivership. They argued that any acts of the business of insurance in which

---

1. The trial court did not render its final judgment and permanent injunction order against Hancock individually. In fact, the court specifically severed Hancock from the present cause. However, we note that the trial court's judgment was rendered against, among others, Risk Managers and its officers, of which Hancock is obviously included.

2. Risk Managers is a Texas corporation with its offices located in Dallas, Texas. Herschel Hancock is the president of Risk Managers. Neither Risk Managers nor Hancock is licensed to conduct the business of insurance in Texas or to act as a third party administrator or adjuster in Texas. Corporate Underwriters, Ltd. ("Corporate Underwriters") is an insurance company incorporated in the Turks and Caicos Islands in the British West Indies. It does not advertise its insurance product in the print or airwaves media in Texas, nor does it direct mail advertisements of its insurance product to prospective insureds in Texas.

3. All statutory references cited herein are to article 1.14–1 of the Texas Insurance Code ("Code") unless otherwise stated.

4. The State also brought suit against Nyle Large, individually and as an agent of Risk Managers. Large is not a party to the present appeal.

they engaged fell within the "independently procured exemption" to the definition of the business of insurance. *See* Code § 2(b)(4) (West Supp.1993). Section 2(b)(4) of the Code provides an exemption to the regulation of the business of insurance, providing that insurance business does not include "transactions involving contracts of insurance independently procured through negotiations occurring entirely outside of this state which are reported and on which premium tax is paid in accordance with ... Article [1.14–1]." On September 25, 1989, the trial court dissolved the temporary receivership and, finding that Appellants had engaged in the unauthorized business of insurance, issued a temporary injunction.

Risk Managers and Corporate Underwriters filed an interlocutory appeal challenging the temporary injunction order on several grounds, including the ground that their insurance business in Texas was exempt from regulation pursuant to section 2(b)(4) of the Code. In affirming the district-court order, this Court held that sufficient evidence existed to support the district court's determination that Risk Managers and Corporate Underwriters had engaged in the unauthorized business of insurance in Texas. *Risk Managers Int'l, Inc. v. State*, No. 3–89–212–CV, slip op. at 8 (Tex.App.—Austin Aug. 8, 1990, writ dism'd w.o.j.) (not designated for publication). In addition, this Court concluded that Risk Managers and Corporate Underwriters failed to demonstrate the applicability of the exemption to themselves. *Id.* at 9.

The parties stipulated as to the following facts for the hearing on the permanent injunction. Prospective insureds in Texas learned of Corporate Underwriters by word of mouth, through trade journals, through industry articles, and through an insurance consultant in Texas. If a prospective insured in Texas became aware of Corporate Underwriters and desired a premium price quotation, the prospective insured would submit that request in writing to Corporate Underwriters by facsimile or mail. Corporate Underwriters and the prospective insured would then communicate, by either facsimile, mail, or telephone, until the prospective insured purchased the insurance [5] and Corporate Underwriters issued its written insurance policy from the Turks and Caicos Islands by facsimile or mail to the insured in Texas. Risk Managers administered all claims arising under the insurance policies.

The trial court severed from this cause the issues relating to the premium taxes, penalties, restitution, attorney's fees, court costs, and individual liability of Hancock. On December 14, 1992, the district court rendered its final judgment and, finding that Risk Managers and Corporate Underwriters had engaged in the unauthorized business of insurance in Texas, issued a permanent injunction. Consequently, the trial court failed to find that Risk Managers and Corporate Underwriters were exempt from regulation under the independently procured exemption of section 2(b)(4) and failed to find that the insurance contracts were procured "through negotiations occurring entirely outside of the State of Texas" pursuant to the exemption. The trial court concluded that the independently procured exemption of section 2(b)(4) requires that "the prospective insured must be physically outside the boundaries of Texas and cannot rely on the use of telephone, facsimile, or mail to facilitate such negotiations." In addition, the trial court concluded that section 2(b)(4), as read in conjunction with sections 11 and 12, was not constitutionally infirm.

## DISCUSSION

█ In three points of error, Appellants assert that the trial court erred in granting the permanent injunction. Appellate review of a district-court order granting or denying a permanent injunction is strictly

---

5. On some occasions, the prospective insured would send a check or money order for the premium directly to Corporate Underwriter's office in the Turks and Caicos Islands. On other occasions, the prospective insured would send the payment, payable to Corporate Underwriters, to Risk Managers in Dallas. Risk Managers, on behalf of Corporate Underwriters, would endorse the instrument and deposit it in Corporate Underwriters' bank account in Dallas.

limited to a determination of whether there has been a clear abuse of discretion by the trial court. *Priest v. Texas Animal Health Comm'n,* 780 S.W.2d 874, 875 (Tex. App.—Dallas 1989, no writ); *Lee v. Bowles,* 397 S.W.2d 923, 926 (Tex.Civ.App.—San Antonio 1965, no writ).

■ Generally, a person or entity claiming the benefit of a statutory exemption has the burden of proving every fact essential to the invocation of the exemption. *See Cramer v. Sheppard,* 140 Tex. 271, 167 S.W.2d 147, 155 (Tex.1942); *United States v. First City Nat'l Bank,* 386 U.S. 361, 366, 87 S.Ct. 1088, 1092, 18 L.Ed.2d 151 (1967). Therefore, Appellants carried the burden of proving that they met all requirements of the independently procured exemption to the business of insurance.

The Code provides that no one shall engage in the business of insurance without specific authorization by statute. Code § 3. Section 2(b) of the Code sets forth six transactions that do not constitute the business of insurance, and section 2(b)(4) establishes the independently procured insurance exemption at issue on this appeal. The independently procured insurance exemption of section 2(b)(4) contains four requirements: (1) the insurance contract must be independently procured; (2) the negotiations must occur entirely outside of Texas; (3) a report must be filed with the State Board of Insurance; and (4) the premium tax must be paid. An insurance transaction that meets this test is not subject to the regulatory control of the State Board of Insurance.

*Applicability of Section 2(b)(4)*

In their second point of error, Appellants argue that the trial court erred in failing to find that Risk Managers and Corporate Underwriters were exempt from regulation pursuant to section 2(b)(4). The trial court concluded that the second prong of the independently procured insurance exemption requires that "the prospective insured

must be physically outside of the boundaries of Texas and cannot rely on the use of the telephone, facsimile or mail to facilitate such negotiations." Appellants attack this conclusion, arguing that the second prong of the exemption requires that only the insurer, not both the insurer and the insured, be physically outside of Texas during the negotiation of the insurance contract. For this proposition, Appellants rely on the United States Supreme Court's decision in *State Board of Insurance v. Todd Shipyards Corp.,* 370 U.S. 451, 82 S.Ct. 1380, 8 L.Ed.2d 620 (1962).[6]

In *Todd Shipyards,* an out-of-state corporation doing business in Texas purchased insurance from insurers not licensed to do business in Texas. The Supreme Court held unconstitutional a Texas statute imposing a tax on insureds that purchased insurance covering risks within the state from an insurer not licensed in Texas. The court noted that "[t]he only connection between Texas and the insurance transaction is the fact that the property covered by the insurance is physically located in Texas." *Id.* The insurers in *Todd Shipyards* did not have an office or place of business in Texas, did not have agents in Texas, did not solicit business in Texas, and did not investigate risks or claims in Texas. Likewise, the insured was not a Texas domiciliary, and losses under the policy were paid to the insured's principal office in New York City. Furthermore, the insurance transactions took place "entirely outside Texas," and the insurance was *"negotiated* and paid for outside of Texas." *Id.* at 454, 82 S.Ct. at 1383 (emphasis added).

■ The facts of *Todd Shipyards* differ from those involved in the present litigation. The insured in that case was an out-of-state corporation, while in the present cause, the insureds were physically located in Texas. Corporate Underwriters sent insurance information to and negotiated con-

---

6. *Todd Shipyards* reaffirmed a trilogy of cases, *Allgeyer v. Louisiana,* 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 (1897), *St. Louis Cotton Compress Co. v. Arkansas,* 260 U.S. 346, 43 S.Ct. 125, 67 L.Ed. 297 (1922), and *Connecticut General Life Insurance Co. v. Johnson,* 303 U.S. 77, 58 S.Ct.

436, 82 L.Ed. 673 (1938), handed down before the enactment of the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–15 (1988), which confers the authority to regulate and tax insurance transactions to the states. *Todd Shipyards,* 370 U.S. at 455, 82 S.Ct. at 1383.

tracts with prospective clients in Texas. Furthermore, in some instances, Corporate Underwriters received premium payments in Texas. The decision in *Todd Shipyards* does not prevent the State of Texas from regulating insurance transactions in which the insured is physically located in Texas during the negotiations leading to formation of an insurance contract.

■ We conclude that the statutes and facts involved in the present action are distinguishable from those in *Todd Shipyards*. The United States Supreme Court has never held that a state may not regulate transactions that occur within its borders. Therefore, we conclude that the State of Texas may regulate insurance transactions where an insured domiciled in Texas obtains insurance by negotiations occurring in whole or in part inside the borders of Texas. We hold the Texas statute, as interpreted by the trial court, conforms to the guidelines issued by the Supreme Court in *Todd Shipyards*. Accordingly, we overrule Appellants' point of error two.

*Constitutionality of Section 2(b)(4) and Judgment*

■ In their first point of error, Appellants maintain that the trial court erred in concluding that section 2(b)(4), as read in conjunction with sections 11 and 12 of the Code, is not constitutionally infirm. They argue that an irreconcilable conflict exists between sections 11 and 12 and that this conflict renders enforcement of the independently procured exemption impossible. Specifically, Appellants contend that, in order to understand section 2(b)(4), one must determine the meaning of the term "independently procured insurance," which they argue is defined in section 12. They further argue that, because the definition of "independently procured insurance" contained in section 12 is identical to the definition of "unauthorized insurance" in section 11, it is impossible to determine what constitutes independently procured insur-

ance. Thus, Appellants contend that insurers are not provided with adequate notice of the conduct necessary to comply with the independently procured exemption and that this lack of notice violates the insurer's due-process rights guaranteed by article I, section 10 of the Texas Constitution and the Fourteenth Amendment to the United States Constitution.[7] The result of this contradictory wording, Appellants argue, is that the Board may arbitrarily label transactions either as unauthorized insurance pursuant to section 11 or independently procured insurance pursuant to section 12.

Article 1.14–1 of the Code in its entirety is entitled "Unauthorized Insurance." Its purpose is to provide a means by which the Board of Insurance and the courts of Texas may acquire personal jurisdiction over an insurer doing business in Texas without having a certificate of authority issued by the Board. Code § 1 (West 1981); *C.W. Bollinger Ins. Co. v. Fish*, 699 S.W.2d 645, 648 (Tex.App.—Austin 1985, no writ). Section 2(b)(4) of the Code provides an exemption to the regulation of the business of insurance, providing that insurance business does not include "transactions involving contracts of insurance independently procured through negotiations occurring entirely outside of this state which are reported and on which premium tax is paid in accordance with Article [1.14–1]." Therefore, although independently procured insurance is included in unauthorized insurance, the legislature has carved out an exemption from regulation for insurance independently procured from an unauthorized insurer. The third and fourth elements of the independently procured insurance exemption of section 2(b)(4) require that the transaction be reported and that the premium tax be paid in order for the transaction to be exempt from regulation. Sections 11 and 12 are merely taxing and

**7.** Appellants additionally contend that because article 1.14–1 of the Code is a penal statute, its vagueness constitutes a violation of the Texas and United States Constitutions. Tex. Const. art. I, § 10 (right of those accused to proper

notice of the accusation against them); U.S. Const. amend. XIV (due process); *see State v. Shoppers World, Inc.*, 380 S.W.2d 107, 111 (Tex. 1964).

reporting statutes pursuant to these requirements.

Section 11, entitled "Unauthorized Insurance Premium Tax," specifies the tax owed on premiums paid to an *unauthorized insurer.* Code § 11 (West Supp.1993).[8] By its own terms, section 11 does not apply to insurance that is exempt from regulation and on which a tax has been paid pursuant to section 2(b)(4). If the premium taxes are not paid in accordance with section 2(b)(4), the insurance transaction then becomes an *unauthorized transaction* not exempt from regulation. In this instance, the higher rate of 4.85 percent under section 11 would be assessed against the insurer.[9] Accordingly, we do not read section 11 to provide the definition for "unauthorized insurance."

Section 12, entitled "Independently procured insurance," sets forth the information that must be contained in the report and instructs where and when the report must be filed for transactions that qualify for the independently procured exemption. Code § 12 (West 1981).[10] In the present case, the stipulated facts indicate that, on some occasions, the insured failed to file the report. Furthermore, in some instances, the premium tax was not paid as required under section 2(b)(4). Because on some occasions the report was not properly filed and the premium tax was not paid, the trial court properly failed to find that certain transactions were exempt from regulation pursuant to section 2(b)(4). We conclude that section 2(b)(4) as read in conjunc-

tion with sections 11 and 12 is neither conflicting nor vague. We, therefore, overrule point of error one.

In their third point of error, Appellants attack the trial court's conclusion that, to meet the independently procured exemption's requirement that negotiations occur entirely outside of Texas, the prospective insured must be outside of Texas during negotiations and cannot utilize the telephone, facsimile, or mail for negotiations. Appellants contend that the trial court's judgment constitutes violations of the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV, and the Commerce Clause of the United States Constitution, U.S. Const. art. I, § 8.

■■■ First, Appellants contend that the district court's ruling violates Corporate Underwriters' due-process rights under the Fourteenth Amendment. Specifically, they argue that the trial court's injunction impermissibly interferes with their activities outside of the State of Texas. The power of the states to regulate the business of insurance must be kept within the limits established in *Todd Shipyards.* The due-process clause restricts a court's power to render a personal judgment against a non-resident defendant. *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). A court, however, has the authority to render such a judgment if the defendant has established minimum contacts with the state. *Burger King Corp. v. Rudzewicz,* 471 U.S.

---

**8.** Section 11 of the Code provides in pertinent part:

> Except as to ... premiums on independently procured insurance on which a tax has been paid pursuant to this Article or Article 1.14–2, every unauthorized insurer shall pay to the State Board of Insurance before March 1 next succeeding the calendar year in which the insurance was so effectuated, continued or renewed a premium receipts tax of 4.85 percent of gross premiums charged for such insurance on subjects resident, located or to be performed in this state.... Such tax shall be in lieu of all other insurance taxes.

**9.** If a transaction qualifies for the independently procured exemption, the premiums are taxed at the lower 3.85 percent rate. Code § 12(c) (West 1981).

**10.** Section 12 of the Code provides in pertinent part:

> Every insured who procures or causes to be procured or continues or renews insurance with any unauthorized insurer, or any insured or self-insurer who so procured or continues excess loss, catastrophe or other insurance, upon a subject of insurance resident, located or to be performed within this state, other than insurance procured through a surplus lines agent pursuant to the surplus lines law of this state shall within 60 days after the date such insurance was so procured, continued, or renewed, file a report of the same with the State Board of Insurance and furnished to such an insured upon request.

462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). For the reasons mentioned earlier, we conclude that the trial court's judgment complies with the requirements set forth in *Todd Shipyards* and that Corporate Underwriters has sufficient contacts with Texas to meet due-process requirements.

 Second, Appellants argue that the trial court's determination that telephone, facsimile, and mail communications during negotiations for insurance must physically take place outside of Texas impermissibly intrudes into the jurisdiction of Congress under the Commerce Clause. The Commerce Clause of the United States Constitution provides that "[Congress has the power] to regulate commerce with foreign nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. In 1945, Congress enacted the McCarran–Ferguson Act (the "Act"), 15 U.S.C. §§ 1011–1015 (1988). The stated purpose of the Act is that "the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States." 15 U.S.C. § 1011. The Supreme Court has interpreted the Act as removing Commerce Clause restrictions on the authority of the states to regulate and tax the business of insurance. *See Western & Southern Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 653, 101 S.Ct. 2070, 2075, 68 L.Ed.2d 514 (1981); *Todd Shipyards,* 370 U.S. at 452, 82 S.Ct. at 1381–82 (1962). Accordingly, we conclude that the statutes in question and the trial court's judgment do not contravene the Commerce Clause.

Because we conclude that the judgment of the trial court neither violates the Fourteenth Amendment nor the Commerce Clause of the United States Constitution, we overrule point of error three.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the district court.