SOUTHWEST PROFESSIONAL INDEMNITY CORPORATION, Perry H. Peterson and Edward G. Fisch, Appellants,

v.

TEXAS DEPARTMENT OF INSURANCE, Appellee.

No. 03–95–00295–CV.

Court of Appeals of Texas, Austin.

Jan. 17, 1996.

Rehearing Overruled Feb. 14, 1996.

tion by the Board because it conducted all of its insurance business entirely outside the state. In fifteen points of error it argues that there is not substantial evidence to support the Board's finding that SPIC engaged in the business of insurance in Texas or that it does not qualify for any exemption from regulation; consequently, the Board's order exceeds its statutory authority, is overly broad or vague, arbitrary and capricious, and impermissibly interferes with SPIC's constitutional rights to enter contracts and do business. SPIC also claims that the order was issued in violation of numerous constitutional protections. Because we find substantial evidence to support the Board's finding that SPIC engaged in the business of insurance in Texas and did not qualify for any statutory exemptions, and because the issuance of the order was constitutionally sound, we will overrule all of SPIC's points of error and affirm the trial court's judgment.

S. Gary Werley, Bishop, Payne, Williams & Werley, L.L.P., Ft. Worth, for appellants.

Dan Morales, Attorney General, Doreen L. Wheeler, John M. Hohengarten, Assistant Attorneys General, Financial Litigation Division, Austin, for appellee.

Before CARROLL, C.J., and JONES and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

The Board of Insurance[1] affirmed an emergency order directing Southwest Professional Indemnity Corporation to cease and desist from engaging with other named parties in the unauthorized business of insurance, unfair methods of competition, and in deceptive acts or practices in the business of insurance. The insurance company and two of its shareholders ("SPIC") sought judicial review of the Board's order, which the trial court affirmed in all respects.

SPIC, organized in the Grand Cayman Islands, insists that it is not subject to regula-

## BACKGROUND

In 1980 twenty-eight podiatrists, all residents of Texas licensed to practice in this state, formed their own company to provide medical malpractice liability insurance. These doctors formed SPIC in the hopes of better controlling the price of their premiums and their settlements. SPIC was organized as a Grand Caymans corporation, with three resident shareholders holding common stock valued at $1 per share. Each Texas podiatrist owns at least ten shares of preferred stock valued at $3000 per share and as a shareholder is entitled but not required to purchase insurance. Only preferred shareholders who purchase insurance are entitled to vote at the annual meeting in the Cayman Islands.

The president and secretary of SPIC are residents of the Cayman Islands and employees of a trust company that charges SPIC for its management services. SPIC shares the office and telephone of its trust company; it has no other employees or agents and pays no commissions.

1. The duties of the former State Board of Insurance are now performed by the Commissioner of Insurance or the Texas Department of Insurance. *See* Tex.Ins.Code Ann. arts. 1.01A, .02 (West Supp.1996); *see also* Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 13.01, 1991 Tex.Gen.Laws 939, 1133.

SPIC does not solicit business in the traditional manner; potential insureds learn of its product from shareholders at seminars and meetings, many of which occur in Texas. New podiatrists are invited to become shareholders and thus to become eligible to purchase insurance.

Policy premiums are set at the annual meeting held in the Cayman Islands. Originally SPIC's secretary sent a premium notice from the Cayman Islands to the Texas address of the doctor who would in turn mail payment back to the Cayman Islands address. After 1987, SPIC began to send invoices to the Texas address listing the three ranges of coverage and their corresponding premium prices. The Texas doctor elected the desired level of coverage and returned the invoice with a check in the appropriate amount; the SPIC secretary would then forward a Declaration Page from the policy to the Texas address of the insured. SPIC hired a Texas attorney to adjust and resolve or defend claims made by Texas patients against the Texas doctors.

SPIC does not hold a certificate of authority to engage in the business of insurance in Texas and has not filed with the Department of Insurance a notice of any claimed exemption to regulation. SPIC has not paid premium taxes to the Department on most of the premiums received from its podiatrists.

In 1991 the Commissioner of Insurance became aware of facts that led him to believe that SPIC was engaged in the unauthorized practice of insurance. The Commissioner issued an *ex parte* cease and desist order against SPIC and four other parties, as authorized by the Insurance Code (the 1991 order, Commissioner's Order No. 91–1344, dated September 11, 1991). *See* Tex.Ins. Code Ann. art. 1.10A, § 2 (West Supp.1996). At the hearing granted by article 1.10A, section 3, SPIC contested the cease and desist order, insisting that the Commissioner relied on misinformation that erroneously connected SPIC with International Bahamian Insurance Company, which had failed to pay claims to Texas patients. SPIC also argued that it conducted its insurance business entirely outside the state and thus was not subject to regulation. After the hearing, re-

lying on stipulations entered by the parties, the Commissioner affirmed the cease and desist order, entering findings of fact and conclusions of law (the 1992 order, Commissioner's Order No. 92–0602, dated June 22, 1992). SPIC appealed the Commissioner's order to the Board. Tex.Ins.Code Ann. art. 1.04(d) (West 1981). For the first time Drs. Peterson and Fisch sought to be granted party status as shareholders; their request was denied at a prehearing conference. After a September 1992 hearing, the Board modified the cease and desist order to make it clear that the company could continue to pay claims, and otherwise affirmed the Commissioner's two previous orders (the 1993 order of the Board No. 60153, dated January 27, 1993).

## SUBSTANTIAL EVIDENCE

### Standard of Review

SPIC brings eight points of error maintaining that the Board's order is arbitrary and capricious and its underlying findings are not supported by substantial evidence. *See* Administrative Procedure Act (APA), Tex.Gov't Code Ann. § 2001.174(2)(E), (F) (West 1996). Agency decisions that are not supported by substantial evidence are deemed arbitrary and capricious. *Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 211 (Tex.1991).

■ In conducting a substantial-evidence review, we must first determine whether the evidence as a whole is such that reasonable minds could have reached the conclusion the agency must have reached in order to take the disputed action. *Texas State Bd. of Dental Examiners v. Sizemore*, 759 S.W.2d 114, 116 (Tex.1988), *cert. denied*, 490 U.S. 1080, 109 S.Ct. 2100, 104 L.Ed.2d 662 (1989); *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex.1984). We may not substitute our judgment for that of the agency and may consider only the record on which the agency based its decision. *Sizemore*, 759 S.W.2d at 116.

■ The agency's findings, inferences and conclusions are presumed to be sup-

ported by substantial evidence, and the appealing party bears the burden of showing a lack of substantial evidence. *Charter Medical*, 665 S.W.2d at 453. Appellant cannot meet this burden merely by showing that the evidence preponderates against the agency decision. *Id.* at 452. If substantial evidence would support either affirmative or negative findings, the reviewing court must uphold the order, resolving any conflict in favor of the agency's decision. *Auto Convoy Co. v. Railroad Comm'n*, 507 S.W.2d 718, 722 (Tex. 1974). "The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency." *Charter Medical*, 665 S.W.2d at 452. The reviewing court should sustain the decision if it determines that reasonable minds could have reached the same conclusions the agency reached. *Suburban Util. Corp. v. Public Util. Comm'n*, 652 S.W.2d 358, 364 (Tex. 1983).

In reviewing SPIC's substantial evidence challenges, we will often refer to the Stipulation of Evidence with attached exhibits which was before the Commissioner and the Board.

*Insurance Business in Texas*

■ Because it affects many of the other issues, we first address SPIC's assertion in its tenth and fourteenth points of error that substantial evidence does not support the Board's findings and conclusion that the company was engaged in the business of insurance in Texas. The Texas Insurance Code outlines those practices which constitute doing insurance business in Texas. *See* Tex. Ins.Code Ann. art. 1.14–1, § 2 (West Supp. 1996). The Board found that SPIC engaged in the business of insurance by (1) making and proposing to make insurance contracts in Texas; (2) soliciting and aiding in the transaction of insurance business in Texas; (3) receiving insurance applications from Texas residents; (4) receiving premium payments and other consideration in the form of stock purchases; and (5) delivering contracts of insurance to Texas residents.

At seminars and other professional gatherings, SPIC shareholders discussed with podiatrists the malpractice insurance provided by SPIC. Those individuals who expressed interest in becoming shareholders and insureds of SPIC were given applications to complete and return for SPIC's review. These applications sought background information regarding the suitability of the applicant for insurance coverage. Most of these activities occurred in Texas. From these facts a reasonable person could conclude, as the Board did, that SPIC through its shareholders was soliciting and aiding in the transaction of insurance business in Texas; these facts certainly provide substantial evidence for the Board's finding that SPIC received applications for insurance from Texas residents. These activities also fall within the practice of insurance as defined by the Insurance Code. *See* Tex.Ins.Code Ann. art. 1.14–1, § 2(a)(6) (West Supp.1996).

To set up insurance coverage, SPIC's corporate secretary mailed premium notices and invoices to the Texas addresses of its shareholders. After the shareholder returned a check for the premium amount, SPIC mailed a Declaration Page reflecting coverage to the insured. These facts support a number of findings by the Board: SPIC proposed to make insurance contracts in Texas by delivering premium notices and invoices, and SPIC made and delivered insurance contracts in Texas by mailing a Declaration Page upon receipt of the premium amount. These practices also fall into the category of practicing insurance under the Insurance Code. *See* Tex.Ins.Code Ann. art. 1.14–1, § 2(a)(1), (4), (6) (West Supp.1996). We overrule points of error ten and fourteen.

The Board found that SPIC engaged in "other transactions of insurance business" in Texas by paying claims to Texas patients of Texas insureds and by settling, compromising, or otherwise resolving claims of those patients. SPIC attacks this finding in its twelfth point of error on the grounds that there is no evidence that 1) these actions took place only in Texas, or 2) that any patient-claimants were Texas patients. SPIC's first contention is without merit because the Board did not find that these activities took place *only* in Texas. Regarding SPIC's second argument, the stipulation of evidence reveals that SPIC paid a number of claims "to Texas patients of [Texas] insureds

in Texas and has settled, compromised or otherwise resolved other of said claims." This stipulation provides substantial evidence for the finding assailed by SPIC. We overrule point of error twelve.

*Statutory Exemptions from Regulation*

The Board found, and the parties stipulated, that SPIC never obtained from the Department of Insurance a license or certificate of authority to practice insurance in Texas. *See* Tex.Ins.Code Ann. art. 1.14, § 1 (West 1981). SPIC claims that its transactions are exempt from state regulation—including the license requirement—under two provisions of the Insurance Code, and in points of error six through eight attacks the Board's findings to the contrary. *See* Tex. Ins.Code Ann. art. 1.14–1, § 2(b)(3), (4) (West Supp.1996).[2]

■ As the entity claiming the statutory exemption, SPIC had the burden of proving that it qualified for the exemptions. *Cramer v. Sheppard*, 167 S.W.2d 147, 155 (Tex.1943); *Risk Managers Int'l, Inc. v. State of Texas*, 858 S.W.2d 567, 570 (Tex.App.—Austin 1993, writ denied). To qualify for the exemptions at issue, the claimant must meet each one of the exemptions' requirements. The Board found that SPIC met *none* of the requirements for *either* exemption, and accordingly concluded that SPIC was not exempt from state regulation. We will uphold the Board's conclusion if substantial evidence supports the Board's findings that SPIC failed to satisfy at least *one* of the requirements contained in each exemption. *See Railroad Comm'n v. City of Austin*, 524 S.W.2d 262, 279 (Tex.1975) (agency order will be upheld on review provided there is valid basis for it, and court is not bound by reasons given by agency).

■ To qualify for the first exemption it claimed, SPIC must show that each one of its business transactions conducted in Texas:

1) involve a policy lawfully solicited, written, and delivered outside of Texas; and

2) cover only subjects of insurance not resident, located, or expressly to be performed in Texas at the time of issuance; and

3) take place after the policy has been issued.

Tex.Ins.Code Ann. art. 1.14–1, § 2(b)(3) (West Supp.1996).

As noted above, the record contains substantial evidence supporting the finding that SPIC solicited and delivered insurance policies in Texas. Thus the Commissioner's finding against SPIC on the first element of this exemption is supported by substantial evidence.

■ Regarding the second element of this exemption, SPIC makes the novel argument that the "subject" of its insurance coverage is not the physician in whose name the policy is issued, but instead is the negligent conduct which constitutes malpractice. Because conduct cannot be classified as a resident and cannot be considered as located in a particular place, there could be no evidence to support the Board's finding that the subjects of SPIC's insurance were *resident* and *located* in Texas. We agree with the Board that, although the insurance covers liability for the act of malpractice, any such act is unique to the physician providing the services. Furthermore, it is the individual physician who must qualify for SPIC insurance. The Board properly concluded that the subjects of SPIC insurance were physicians who, according to the evidence, resided and were located in Texas. We hold that there was substantial evidence for the Board's conclusion that SPIC does not qualify for the exemption described in section 2(b)(3). *See Charter Medical*, 665 S.W.2d at 452. We need not address SPIC's argument that the Board's remaining findings concerning this exemption

2. Article 1.14–1, section (2)(b) of the Insurance Code describes insurance transactions that are not subject to state regulation. Tex.Ins.Code Ann. art. 1.14–1, § 2(b) (West Supp.1996). An entity claiming one of these exemptions must file notice of the claimed exemption and supporting documentation with the Commissioner of Insurance before engaging in the insurance business. Tex.Ins.Code Ann. art. 1.14–1, § 14 (West Supp. 1996). SPIC acknowledged that it failed to comply with this requirement.

are not supported by substantial evidence. *See City of Austin,* 524 S.W.2d at 279.

The second exemption claimed by SPIC requires a showing, with respect to every one of its business transactions in Texas, that:

1) the transaction involved an insurance contract independently procured;

2) the insurance contract negotiations occurred entirely outside Texas;

3) SPIC filed a report on these transactions; and

4) SPIC paid a premium tax on these transactions.

Tex.Ins.Code Ann. art. 1.14–1, § 2(b)(4) (West Supp.1996). We have already determined that there is substantial evidence for the Board's finding that SPIC solicited and proposed to make insurance contracts in Texas; thus the Board's finding against SPIC on the second of these statutory elements is supported by substantial evidence. SPIC is therefore not exempt from regulation under this provision. *See Risk Managers,* 858 S.W.2d at 571 (Texas may, under section (2)(b)(4), regulate insurance transactions where an insured domiciled in Texas obtains insurance by negotiations occurring in whole or in part in Texas). We overrule points of error six through eight.

### Deceptive Practices and Imminent Peril

■ Because SPIC engaged in the business of insurance in Texas without obtaining a certificate of authority to do so, and without qualifying for an exemption from regulation, SPIC's insurance business in Texas was unauthorized. *See* Tex.Ins.Code Ann. art. 1.14–1, §§ 2, 3 (West Supp.1996). The Board found that SPIC issued deceptive or misleading statements by failing to indicate on its "Declaration Page" that its insurance was "unauthorized" as defined by the Insurance Code. *See* Tex.Ins.Code Ann. art. 1.14–1, § 3 (West Supp.1996). SPIC claims in its thirteenth point of error that this finding by the Board was not supported by substantial evidence, because there was no evidence of anyone being misled or deceived by these statements. This point of error misconstrues the Board's finding. The Board did not find that any particular person was misled or

deceived; it found that the statement tended to mislead or deceive its readers.

The Board apparently determined that the unauthorized status of SPIC as an insurer was a significant aspect of the coverage it provided. We believe the Board was reasonable in reaching this conclusion, especially in light of the dangers attending the unauthorized practice of insurance in Texas. *See* Tex.Ins.Code Ann. art. 1.14–1, §§ 1, 3(h) (West Supp.1996). The evidence showed that a purpose of the Declaration Page was to show the extent of the policyholder's coverage. The failure to disclose SPIC's unauthorized status therefore tended to deceive or mislead the policyholder by omitting significant information relevant to the coverage provided. We overrule point of error thirteen.

■ The Board also found that SPIC's practice of insurance constituted an imminent peril to the public health, safety and welfare of Texas citizens. In its fifteenth point of error, SPIC asserts that there was no evidence in support of this finding. The legislature has determined that the unauthorized practice of insurance constitutes "an imminent peril to the public welfare." Tex.Ins. Code Ann. art. 1.14–1, § 3(h) (West Supp. 1996). We have already determined that substantial evidence supports the Board's finding that SPIC was engaged in the unauthorized business of insurance in Texas. SPIC's business transactions in Texas therefore constituted imminent peril per se under the Insurance Code. We overrule point of error fifteen.

SPIC attacks in its eleventh point of error the Board's finding number 29 on the grounds that it is vague and conclusory. *See Charter Medical,* 665 S.W.2d at 452. The finding states:

SPIC has engaged in insurance business in a manner designed to evade the provisions of the statutes by setting up and operating an insurance business which provides Texas residents with professional liability insurance without complying with the requirements of the Texas Insurance Code.

SPIC claims this finding does not describe the manner in which its business was de-

signed to evade provisions of the Code. We disagree. SPIC's business was designed to evade the Code in that SPIC provided insurance without a certificate of authority and without being exempt from regulation, which in turn allowed it to escape regulation by the Board.

SPIC also complains that there are no underlying facts supporting this finding. The factual basis of this finding is SPIC's unauthorized practice of insurance, and we have already determined that substantial evidence supports the Board's finding on this issue. We overrule point of error eleven.

## CONSTITUTIONAL CHALLENGES

■ SPIC levels various constitutional challenges against the Board's cease and desist order. In its first three points of error, SPIC attacks the cease and desist order on the grounds that it is overly broad and too vague to be enforceable. We presume that the Board's final order is valid, and the party contesting the order bears the burden of proving otherwise. *See City of El Paso v. Public Util. Comm'n,* 839 S.W.2d 895, 902 (Tex.App.—Austin 1992), *reversed in part on other grounds,* 883 S.W.2d 179 (Tex.1994); *Hassell v. Board of Nurse Examiners,* 695 S.W.2d 284, 285 (Tex.App.—Austin 1985, no writ).

*Overly Broad*

■ SPIC first argues that the order is overly broad in that it prohibits SPIC from practicing insurance until SPIC and all the other parties subject to the order simultaneously hold a license or certificate of authority to practice insurance. Under this view of the order, SPIC could in the future obtain a license, yet still be prevented from practicing insurance if any of the four remaining parties had not also obtained a license. The order states in part:

> INTERNATIONAL BAHAMIAN INSURANCE COMPANY (S.V.), LIMITED; PETER BROCK; P.C. NELSON; H. RILEY; STANLEY K. JOHN; G. HOWARD; and SOUTHWEST PROFESSIONAL INDEMNITY CORPORATION, and those acting as their agents, representatives or in concert with them shall immediately cease and desist from . . . .

The order goes on to specify eleven acts prohibited under it; most of these provisions simply prohibit these parties from engaging in the business of insurance until they are licensed. A representative provision reads:

> Making or proposing to make, as an insurer, any insurance contract until INTERNATIONAL BAHAMIAN INSURANCE COMPANY (S.V.), LIMITED; PETER BROCK; P.C. NELSON; H. RILEY; STANLEY K. JOHN; G. HOWARD; and SOUTHWEST PROFESSIONAL INDEMNITY CORPORATION hold a valid applicable license or certificate of authority issued by the Texas Department of Insurance.

■ The order's presumption of validity requires us to construe it in a manner that is constitutional, if at all possible. SPIC's reading of the order raises serious constitutional concerns, because it would deprive SPIC the ability to engage in lawful activity based on the unrelated actions of a third party. Read consistently with the constitution, however, the order prevents these parties from engaging in certain acts *as a collective,* until each one of the parties obtains a license. We believe this reading is compelled by the Board's use of the conjunctive "and" when naming the parties. If the Board had intended to prohibit each party from practicing insurance individually until all parties had a license, it would have listed the parties in the disjunctive at the beginning of the order.

Furthermore, SPIC's interpretation would require an inconsistent reading of identical terms used in the order. Throughout the order, the parties are listed using the conjunctive "and." SPIC claims that the order requires them to cease and desist from practicing insurance *individually* until the parties *collectively* obtain licenses. According to this view, the list at the beginning of the order refers to the parties individually, while the identical list of the parties in the later provisions refers to them as a collective. Our constitutional construction of the order consistently interprets the parties as a collective.

We also note that reading the terms as applying to the parties on an individual, rather than a collective basis would render the order superfluous. Most of the provisions in the order simply prohibit the parties from engaging in the business of insurance without a license. These provisions track the language of the Code sections which define the practice of insurance in Texas. If the order applied to the parties individually, it would accomplish nothing more than what the law already requires. Instead, the order mandates that the parties cannot practice insurance *in concert with one another* until all of the parties obtain a license, and such an order is not overly broad.

*Vagueness*

■■■■ We reject SPIC's contention in its third point of error that the order is too vague because it does nothing more than require compliance with the law. SPIC complains that the order's command not to engage in insurance practices subject to regulation violates the requirement that injunctions must be "definite, clear, and precise as possible. . . ." *See Villalobos v. Holguin,* 146 Tex. 474, 208 S.W.2d 871, 875 (1948). First we note that this case involves a cease and desist order, punishable only by fine. Violation of an injunction amounts to contempt, which is punishable by fine or imprisonment. *See* Tex.Gov't Code Ann. § 21.001 (West 1988); *Green Oaks, Ltd. v. Cannan,* 749 S.W.2d 128, 131 (Tex.App.—San Antonio 1987), *writ denied,* 758 S.W.2d 753 (Tex.1988). Because violation of the order could not result in a deprivation of liberty, the order need not meet the same standards as an injunction. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). In any case, the order apprises SPIC of the specific conduct prohibited by it: SPIC cannot affiliate its insurance business with the other parties unless all of the parties have licenses to practice insurance in Texas.

The cease and desist order prevents the parties from attempting to evade the order's provisions by engaging in insurance transactions that are substantially equivalent to acts specifically prohibited in the order. SPIC challenges this restriction as being too vague. The restriction mirrors the language of a section in the Insurance Code. *See* Tex.Ins. Code Ann. art. 1.14–1, § 2(a)(9) (West Supp. 1996). The statute, the order, and this Court recognize the impossibility of delineating every conceivable act which constitutes the business of insurance subject to regulation. Thus we believe that prohibiting conduct "substantially equivalent" to specifically defined conduct adequately informs SPIC of what it, in conjunction with the other parties, cannot do under the order.

SPIC makes the same vagueness attack against that part of the order prohibiting the dissemination of untrue, deceptive, or misleading information regarding the party's insurance business. This provision tracks the language of the Insurance Code prohibiting false advertising. *See* Tex.Ins.Code Ann. art. 21.21, § 4(2) (West Supp.1996). We believe the order, like the statute, reasonably leaves it to the affected party to determine what is untrue, deceptive, or misleading in a particular case. We therefore conclude that this provision of the order provides sufficient notice of those activities it prohibits.

*Authority to Regulate*

■■■■ SPIC complains that the order illegally attempts to regulate SPIC's business activities throughout the world. This stretched view of the order ignores the fact that the State of Texas does not have global regulatory powers. Any attempt by Texas to regulate activities outside its jurisdiction would violate the federal constitution. *See Connecticut Gen. Ins. Co. v. Johnson,* 303 U.S. 77, 80–81, 58 S.Ct. 436, 438, 82 L.Ed. 673 (1938). We decline SPIC's invitation to read an unconstitutional element into the order. *See City of El Paso,* 839 S.W.2d at 902.

SPIC asserts that the order violates statutory authority because it requires that SPIC obtain a license to conduct insurance practices which are not subject to regulation under the Code. *See* Tex.Ins.Code Ann. art. 1.14–1, § 2(b) (West Supp.1996). Our reading of the order reveals that it does not address conduct which falls within these statutory exemptions. Nothing in the order prevents SPIC from individually engaging without a license in those insurance practices which are exempt from regulation under the

Code. SPIC complains that the Department of Insurance has suggested medical malpractice insurance can never qualify for the exemption contained in section 2(b)(4), but there is no language to that effect in the order. This issue is therefore not before us.

SPIC makes numerous arguments that the order is constitutionally invalid because it exceeds the State's right to regulate insurance business conducted in Texas. SPIC claims that the order prevents it from engaging in *any* insurance business in Texas, including insurance business not subject to regulation under the Code. Because of this, SPIC argues, the order violates the Supreme Court's holding in *Allgeyer v. Louisiana*, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 (1897), which was reaffirmed in *State Bd. of Ins. v. Todd Shipyards Corporation*, 370 U.S. 451, 82 S.Ct. 1380, 8 L.Ed.2d 620 (1962).

*Allgeyer* dealt with Louisiana's attempt to regulate transactions occurring within its borders on an insurance contract made in New York. The insured was a Louisiana resident, and the policy covered property to be shipped from Louisiana to New York. Prior to the shipment, the insured mailed to the New York company a notification of the property to be delivered; Louisiana claimed that this mailing of notice was "an act to effect insurance." *Id.* at 586, 17 S.Ct. at 430. The Court held that this alone did not amount to an act of insurance subject to regulation. *Id.* at 589, 17 S.Ct. at 431. It noted that the parties contracted for the insurance in New York, and that premiums were paid and losses adjusted in New York. *Id.* at 584, 588, 17 S.Ct. at 429, 430–31. The Court stated that its decision had no application to "acts done within the state by an insurance company or its agents doing business therein . . . ." *Id.* at 590, 17 S.Ct. at 432.

The Insurance Code specifically exempts from regulation the type of insurance transactions at issue in *Allgeyer. See* Tex.Ins. Code Ann. art. 1.14–1, § 2(b)(4) (West Supp. 1996) (exempting from regulation transactions on insurance contracts independently procured through negotiations occurring entirely outside Texas, provided transactions are reported and appropriate premium tax paid). We have already held that the cease and desist order does not prevent SPIC individually from qualifying for any of the exemptions in the statute, including this one. Thus, the order is consistent with the Supreme Court's holding in *Allgeyer. See also Risk Managers*, 858 S.W.2d at 571 (holding that Texas insurance regulatory scheme conforms to Supreme Court's restrictions on state regulation described in *Todd Shipyards* ).

For the reasons outlined in this section, we overrule SPIC's first three points of error.

*Procedure and Due Process*

█ SPIC attacks the Commissioner's issuance of the cease and desist order on two procedural grounds. SPIC complains in its ninth point of error that the procedures employed in issuing the cease and desist order violated its shareholders' procedural due process rights. In this case, the Commissioner issued the cease and desist order 1) on the belief that the parties were engaged in the unauthorized business of insurance, and were committing unfair or deceptive acts in the insurance business; and 2) on the appearance that the alleged conduct created an immediate danger to the public safety. The Commissioner based these conclusions on the application for the cease and desist order, made by the Enforcement division of the Department of Insurance, and the affidavit of the individual investigating the parties' activities.

Section 1.10A of the Insurance Code authorizes the Commissioner to issue an *ex parte* emergency cease and desist order on these grounds. *See* Tex.Ins.Code Ann. art. 1.10A, § 2(1)(B), (C); § 2(2) (West Supp. 1996). The Code provides that an affected party may contest the order at a hearing before the Commissioner; the request for a hearing must be made within thirty days of the order, and the hearing must be held within ten days of the request. Tex.Ins.Code Ann. art. 1.10A, § 3(b), (c), (f) (West Supp. 1996).

SPIC claims this scheme violates procedural due process on the grounds that it does not provide substantial assurance that the pre-hearing deprivation of rights will have a sufficient foundation. SPIC asserts a consti-

tutionally protected interest in its shareholders' right to contract with SPIC, and in its shareholders' property interest in the value of their shares and contract rights. We will assume without deciding that these are constitutionally protected rights entitled to procedural due process protection.

 The guarantees of due process of law have the purpose of securing liberty and property interests against action by government that is fundamentally unfair. *Haug v. Franklin,* 690 S.W.2d 646, 649 n. 2 (Tex. App.—Austin 1985, no writ) (citing *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)). "Due process of law" is not a technical concept having a fixed content unrelated to time, place, and circumstances; the term implies fundamental fairness in the context of the particular case. *Id.* What constitutes fundamental fairness is an inference drawn from the totality of the facts in the particular case in light of reason, precedent, history, the private interest at stake, the government's interest, and the risk that the procedures employed will lead to erroneous decisions. *Id.* (citing *Lassiter v. Department of Social Servs.,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)).

We begin by observing the minimal private interest affected by the cease and desist order. The order prohibits SPIC from engaging in insurance business with the other parties for as long as they are all unlicensed. It diminishes those contract rights which would have been available only through the practice of insurance in concert with these other parties. Stocks lose only the value attributable to SPIC's activities with these other parties.

The government, on the other hand, has a great interest in protecting citizens from the unauthorized practice of insurance. The legislature has determined that the unauthorized practice of insurance jeopardizes citizens' rights, threatens fairness and honesty in the insurance market, and results in unfair competition. *See* Tex.Ins.Code Ann. art. 1.14–1, § 1 (West Supp.1996). Accordingly, "persons engaging in the business of insurance without statutory authorization constitute an imminent peril to the public welfare

and should *immediately* be stopped and enjoined from doing so. . . ." Tex.Ins.Code Ann. art. 1.14–1, § 3(h) (West Supp.1996) (emphasis added).

The application for the order in this case included a specific description of the allegations against SPIC, and the sworn affidavit of the person investigating the case. The procedural scheme affords the affected party an opportunity to challenge the order at a full hearing within ten days of requesting the hearing. *See* Tex.Ins.Code Ann. art. 1.10A, § 3(b), (e) (West Supp.1996). Given this provision for a prompt hearing, the risk of erroneous deprivation of rights is low. In light of the minimal private interest at stake, the weighty interest of the government in regulating the insurance business, and the procedures employed, we hold that the *ex parte* issuance of the cease and desist order in this case meets the requirements of due process of law. *See Fahey v. Mallonee,* 332 U.S. 245, 254, 67 S.Ct. 1552, 1556, 91 L.Ed. 2030 (1947) (holding summary deprivation of property, followed by hearing, did not violate Constitution).

 In its fifth and ninth points of error, SPIC claims that the order is defective because it was issued on the basis of incompetent evidence. The application for the cease and desist order alleged that SPIC had acted as an "agent, employee, and/or representative" of International Bahamian. SPIC asserts that there was no evidence before the Commissioner connecting SPIC to International Bahamian.

As we have already discussed, the Commissioner was authorized to issue the cease and desist order based on the application for the order and the accompanying affidavit. We construe SPIC's complaint here to be directed at the affirmance of the order following the hearing before the Commissioner. At the hearing, a copy of an International Bahamian policy page was introduced. The signature of Peter Harty, SPIC's secretary, appeared on the same page; above the signature was the name "Southwest Professional Indemnity Corporation." Based on this evidence alone, a reasonable person could conclude that SPIC's insurance business was

connected with that of International Bahamian. *See Charter Medical,* 665 S.W.2d at 453. SPIC claims that the appearance of the document was such that its name and the signature must have been superimposed on the original policy page. Questions regarding the legitimacy of the document go to the weight that it should be given, and this Court is not entitled to substitute its own determination for that of the agency on this issue. *Id.* at 452. Accordingly, we reject SPIC's argument that there was no credible evidence linking it to International Bahamian.

SPIC also argues in its fifth point of error that it did not receive adequate notice of the charges asserted against it. *See* Tex.Gov't Code Ann. § 2001.052(a)(4) (West 1996). The notice provided by the Department of Insurance incorporated the allegations made against SPIC in the cease and desist order application, and included the charge that SPIC individually was engaging in the unauthorized practice of insurance in Texas. SPIC urges that none of the findings of fact made against it substantiated the allegations in the cease and desist order application, and that therefore no facts were proven at the hearing which supported the issuance of the order. We have already concluded that substantial evidence, which was introduced at the hearing, supports the Commissioner's conclusion that SPIC's business was connected to that of International Bahamian. SPIC had notice of each allegation made against it, and therefore had the opportunity to meaningfully challenge these allegations at the hearing. We overrule points of error five and nine.

■ In its fourth point of error, SPIC claims that the Board wrongfully denied party status to Drs. Peterson and Fisch, two of its shareholders and insureds. After the Commissioner issued the emergency cease and desist order, SPIC requested and obtained a hearing before the Commissioner to contest the order. *See* Tex.Ins.Code Ann. art. 1.10A, § 3(b) (West Supp.1996). When the Commissioner ruled against SPIC at the hearing, SPIC sought review of that decision before the Board. *See* Tex.Ins.Code Ann. art. 1.04(d) (West 1981). Although neither Dr. Peterson nor Dr. Fisch appeared individually before the Commissioner, they both sought party status in the proceedings before the Board.

The Insurance Code provides that any person "affected by any ruling or action" of the Commissioner shall have the right of review before the Board of Insurance, by making application to the Board. Tex.Ins.Code Ann. art. 1.04(d) (West 1981). This Court has held that the right to participate in agency hearings must be liberally construed, in order to provide the agency the benefit of diverse viewpoints. *Fort Bend County v. Texas Parks & Wildlife Dep't,* 818 S.W.2d 898, 899 (Tex.App.—Austin 1991, writ denied). The Board's General Counsel concluded that Drs. Fisch and Peterson would not bring such diversity to the hearing, and denied them party status. The Board agreed, noting that it saw no difference between the interests of SPIC and the two doctors.

We presume that the Board's decision on this issue is correct. *See City of El Paso v. Public Util. Comm'n,* 839 S.W.2d at 902; *Hassell,* 695 S.W.2d at 285. Drs. Peterson and Fisch have not argued on appeal that they, as separate parties, may have presented issues to the Board which differed from those presented by SPIC. Thus, they have made no showing that they were prejudiced by the denial of party status. We hold that because Dr. Peterson and Dr. Fisch failed to demonstrate that they were "affected" by the Commissioner's action in a way distinct from SPIC, the Board appropriately denied them party status.

In this same point of error, Drs. Peterson and Fisch assert that the Board's final order violates their due process rights because they are no longer able to obtain insurance from SPIC. They support this contention with the claim that SPIC's insurance business is not subject to regulation by the State, an argument we have already rejected. We overrule point of error four.

Having overruled each of SPIC's points of error, we affirm the judgment of the trial court.