TEXAS HEALTH CARE INFORMA-
TION COUNCIL and the State of Tex-
as, Office of the Attorney General,
Appellants,

v.

SETON HEALTH PLAN,
INC., Appellee.

No. 03–02–00114–CV.

Court of Appeals of Texas,
Austin.

Dec. 19, 2002.

Idolina Garcia, Assistant Attorney General, Austin, for appellants.

John K. Schwartz, Robyn L. Strelitz, Locke Liddell & Sapp, LLP, Austin, for appellee.

Before Chief Justice ABOUSSIE, Justices PATTERSON and PURYEAR.

MARILYN ABOUSSIE, Chief Justice.

Appellants Texas Health Care Information Council ("the Council") and the State of Texas, Office of the Attorney General ("the Attorney General") (collectively "the State"), appeal the district court's judgment granting appellee Seton Health Plan, Inc.'s ("Seton") request for a declaratory judgment to construe a statute, ordering Seton to pay penalties, ordering the State to pay Seton attorney's fees, and dismissing with prejudice the Council's counterclaim and request for injunctive relief. In four issues, the State contends the district court's judgment must be reversed because: (1) Seton's action for declaratory judgment was moot or alternatively Seton's request for declaratory judgment was barred by sovereign immunity; (2) the State was entitled to injunctive relief in addition to the assessment of a civil penalty against Seton; (3) the court's assessment of the minimum penalty constituted an abuse of discretion; and (4) the failure to award the State reasonable attorney's fees and costs constituted an abuse of discretion. We will affirm in part and reverse and remand in part.

## BACKGROUND

Seton is a licensed health maintenance organization ("HMO") providing health benefits plans, claims administration, and claims payment for member groups

throughout central Texas. Under Chapter 108 of the Texas Health and Safety Code ("the Code"), Seton must file a verified annual Health Plan Employer Data Information Set ("HEDIS") report with the Council. *See* Tex. Health & Safety Code §§ 108.009, .010 (West 2001); *see also* 25 Tex. Admin. Code § 1301.33 (West 2002) (Texas Health Care Information Council, Health Care Information). The HEDIS report must include data on the number of members served by the HMO, the demographics of the services provided, aggregate claims information, and related information for the specified reporting period. The Code provides for a civil penalty for failure to file an annual HEDIS report: "A person who fails to supply available data under Sections 108.009 and 108.010 is liable for a civil penalty of not less than $1,000 or more than $10,000 for each act of violation." Tex. Health & Safety Code § 108.014(b). Seton's 1999 report was due to be filed with the Council by June 15, 2000. Seton did not file its report.

On January 10, 2001, Seton was notified by a letter from the Attorney General (the "Johnsonius letter") that it had failed to file the 1999 HEDIS report and that "demand is hereby made for the amount of $153,000 in civil penalties." The letter also stated that if Seton did not make the payment to the Council, the Attorney General "will file a lawsuit against Seton ... for no less than the amount of $153,000...."[1] Seton conceded the failure to file, but disputed the amount of the penalty. Seton took the position that $10,000 per report

was the maximum penalty for failure to file the annual HEDIS report. The State responded that it interpreted "each act of violation" in section 108.014 of the Code to mean each day of violation.[2] In the months following its receipt of the Johnsonius letter, Seton made a number of attempts to pay a civil penalty that it believed comported· with the statute. In each instance, the State rejected the offer and stated that it intended to file a lawsuit to collect a penalty of no less than $153,000. During one exchange, after rejecting Seton's offer to pay a $12,500 penalty, the Attorney General stated that "little remains but to see how the Courts will interpret the Statute."

In March 2001, Seton filed a declaratory judgment action against the Council and the Attorney General to construe the statute pursuant to the provisions of the Administrative Procedure Act ("the APA") and Uniform Declaratory Judgments Act ("the UDJA"). Tex. Gov't Code Ann. § 2001.038 (West 2000); Tex. Civ. Prac. & Rem.Code Ann. § 37.003 (West 1997). Seton sought a declaration that $10,000 per report is the maximum civil penalty that may be assessed under the Code for failure to file the annual HEDIS report. Seton also sought to recover its attorney's fees and costs incurred in obtaining the requested relief.

On April 13, 2001, the Attorney General sent a letter (the "withdrawal letter") to Seton stating that the Johnsonius letter was "withdrawn" and that it "was not intended as an assessment of civil penalties"

---

**1.** According to the Code, the "attorney general, at the request of the council, shall enforce this chapter." Tex. Health & Safety Code Ann. § 108.014(c) (West 2001). Also, a "civil penalty recovered in a suit instituted by the attorney general under this chapter shall be deposited in the general revenue fund to the credit of the health care information account." *Id.* § 108.014(d).

**2.** Kay Johnsonius, Assistant Attorney General, told counsel for Seton that the State had calculated the penalty by determining that Seton's 1999 report was 153 days late, which, at $1,000 per day, amounted to a $153,000 civil penalty.

because that power "is vested in our courts." In July, the Council counterclaimed against Seton, seeking to have the district court: (1) permanently enjoin Seton from violating the Code by ordering it to submit HEDIS reports for the years 1999 and 2000 and each subsequent year thereafter;[3] (2) order that Seton be assessed "civil penalties not to exceed $10,000 for each act of violation for its failure to submit HEDIS data" for 1999 and 2000; and (3) order Seton to pay the Council's costs and attorney's fees. Seton and the State then filed cross-motions for summary judgment.

The State argued in its motion for summary judgment that Seton's claim for declaratory relief was moot once the Attorney General had withdrawn the Johnsonius letter and because it was "neither requesting the assessment by [the district court] of penalties in excess of $10,000 per violation, nor is there a threat to [Seton] that [the State] will do so in the future." Seton contended that the district court had jurisdiction to grant declaratory relief because, while acknowledging that "no current controversy" existed between itself and the State on the issue of the maximum civil penalty for the two years in question, it still had "reason to fear that [the Council] may in the future attempt to assess penalties in excess of the maximum allowed by the regulation." Following a hearing and submission of briefs, the district court rendered a final declaration and judgment whereby it: (1) declared $10,000 per report to be the maximum penalty for failure to file an annual HEDIS report required by statute and the Council's rules; (2) assessed penalties against Seton of $1,000 for failure to file a 1999 report and $1,000 for failure to

file a 2000 report; (3) ordered the State to pay Seton $15,000 in attorney's fees for obtaining the declaratory judgment; and (4) dismissed with prejudice the Council's counterclaim, thereby denying injunctive relief. This appeal followed.

## STANDARD OF REVIEW

Summary judgment is proper if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). The standards for reviewing a summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mngmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

Here, the parties asserted that there were no disputed material issues. Because all parties filed motions for summary judgment, one of which was granted and the other denied, we must review the summary judgment evidence presented by both sides, determine all questions presented, and render such judgment as the trial court should have rendered. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex.2001); *Van-liner Ins. Co. v. Tex. Workers' Comp. Comm'n*, 999 S.W.2d 575, 577 (Tex.App.-Austin 1999, no pet.) (citing *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)). Each party must carry its own

---

**3.** Seton's 2000 HEDIS data was due to be filed with the Council on June 15, 2001; it

was overdue by the date the Council filed its counterclaim.

burden as the movant and, in response to the other party's motion, as the non-movant. *Gaut v. Amarillo Eco. Dev. Corp.*, 921 S.W.2d 884, 887 (Tex.App.-Austin 1996, no writ) (citing *James v. Hitchcock Indep. Sch. Dist.*, 742 S.W.2d 701, 703 (Tex.App.-Houston [1st Dist.] 1987, writ denied)). The prevailing party bears the burden of establishing that it is entitled to judgment as a matter of law. *Gaut*, 921 S.W.2d at 887 (citing *Guynes v. Galveston Co.*, 861 S.W.2d 861, 862 (Tex.1993)).

In its final judgment, the district court held that "there is no material fact question on any of the parties' disputes." When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm the summary judgment if any of the summary judgment grounds are meritorious. *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex.2000) (citing *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995)).

## DISCUSSION

### Mootness

■ In its first issue, the State contends that the district court lacked jurisdiction over Seton's request for declaratory judgment because no live controversy existed at the time the court rendered a decision. We disagree. A declaratory judgment action may be used, among other things, to determine "any question of construction or validity arising under" a statute. Tex. Civ. Prac. & Rem.Code Ann. § 37.004(a) (West 1997); *see also Frasier v. Yanes*, 9 S.W.3d 422, 427 (Tex.App.-Austin 1999, no pet.). In the words of the supreme court, a declaratory judgment proceeding is "an additional remedy and does not supplant any existing remedy, but is intended as a speedy and effective remedy for the determination of the rights of the parties when a real controversy has arisen and even

before the wrong has actually been committed." *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 713 (1945).

■ A declaratory judgment is appropriate when a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995); *Texas Dept. of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex.App.-Austin 1998, no pet.). A declaratory judgment action does not vest a court with the power to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication. *Firemen's Ins. Co. v. Burch*, 442 S.W.2d 331, 333 (Tex.1968). A controversy is considered justiciable, however, if there exists a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *Beadle*, 907 S.W.2d at 467; *City of Austin v. L.S. Ranch, Ltd.*, 970 S.W.2d 750, 754 (Tex. App.-Austin 1998, no pet.). Otherwise, the judgment amounts to no more than an advisory opinion, which the district court does not have power to render. *Lone Starr Multi Theatres, Inc. v. State*, 922 S.W.2d 295, 297 (Tex.App.-Austin 1996, no writ).

■ The mootness doctrine dictates that courts avoid rendering advisory opinions by only deciding cases that present a "live" controversy at the time of the decision. *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex.1988). A case becomes moot when: (1) it appears that one seeks to obtain a judgment on some controversy, when in reality none exists; or (2) when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal

effect on a then-existing controversy. *Scholl v. Firemen's & Policemen's Civil Serv. Comm'n,* 520 S.W.2d 470, 471 (Tex. Civ.App.-Corpus Christi 1975, no writ) (actions requested in suit for declaratory and injunctive relief were taken so no controversy remained). Cases may become moot when allegedly wrongful behavior has passed and could not be expected to recur. *Securities & Exch. Comm'n v. Medical Comm. for Human Rights,* 404 U.S. 403, 406, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972); *see also Reyna v. City of Weslaco,* 944 S.W.2d 657, 662 (Tex.App.-Corpus Christi 1997, no writ).

The State argues that the controversy between these parties became moot when the Attorney General withdrew the Johnsonius letter and conceded that the Attorney General and the Council lacked the power to assess civil penalties because the Johnsonius letter was "the crux of the controversy between the parties in this lawsuit and the sole basis of the trial court's supposed jurisdiction over Seton's request for declaratory relief." According to the State, because the Attorney General's admissions in the withdrawal letter constituted judicial admissions which "conclusively ended any conflict between the parties," the district court's declaration that section 108.014 of the Code allows for a $10,000 maximum penalty for failure to file an annual HEDIS report therefore amounted to an unconstitutional advisory opinion. *See National Collegiate Athletic Ass'n v. Jones,* 1 S.W.3d 83, 86 (Tex.1999) (noting mootness "prohibition is rooted in the separation of powers doctrine in the Texas and United States Constitutions").

This argument fails because the State attributes too broad an effect to the statements made by the Attorney General in the withdrawal letter. The withdrawal letter merely stated that the Johnsonius letter "was not intended as an assessment of civil penalties" because that power "is vested in our courts." When Seton sought a declaration that $10,000 is the maximum penalty for failure to file an annual HEDIS report, it did so with the State's implicit threat that "little remains but to see how the Courts will interpret the Statute." An actual controversy remained because, to the extent that the State still intended Seton to pay a penalty, the State would have to pursue litigation. The withdrawal letter did not concede that the State had misinterpreted section 108.014 nor did it state that a daily penalty or other time sensitive interpretation of the statute would not be urged by the State when it sought a civil penalty by a court. The Johnsonius letter was withdrawn by the Attorney General several months before the Council counterclaimed, and at a time when Seton's situation was not so hypothetical or contingent as to moot its need to obtain a declaratory judgment construing the statute and the rule in dispute.

Contrary to the State's contention, we cannot hold that the withdrawal letter clearly constituted a binding judicial admission as to the interpretation of the penalty provision such that the dispute became moot. Judicial admissions, for example an admission in the pleadings on which the case is being tried, an agreed statement of facts in the case, or a formal declaration in court, are conclusive on the party making the admission. By contrast, ordinary admissions may be contradicted or explained. *Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.,* 606 S.W.2d 692, 694 (Tex.1980). Here, the withdrawal letter was not a formal statement made during the course of the judicial proceeding that would remove all dispute over the statute's interpretation from the field of controversy; rather, it was an ordinary or extrajudicial admission that the State could later contradict or explain. Furthermore, the admissions made in the with-

drawal letter by the Attorney General concerned a question of law and therefore would not necessarily bind the Council or the State to any particular interpretation of the Code, especially with respect to maximum penalties. *See* Tex. Gov't Code § 402.004 (West 1998);[4] *see also State v. Keeton Packing Co.*, 487 S.W.2d 775, 780 (Tex.Civ.App.-Amarillo 1972, writ ref'd n.r.e.).[5] Thus, even after the Attorney General withdrew the Johnsonius letter, the Council could still determine that seeking a greater assessment penalty against Seton was a proper course of action.

The State further contends that the Council's counterclaim conceded Seton's interpretation of the Code, thus causing Seton's declaratory judgment claim to become moot. The counterclaim sought an order that Seton "pay civil penalties not to exceed $10,000 for each act of violation for its failure to submit HEDIS data to [the Council] for 1999 and 2000 in violation of [the Code]." In its motion for summary judgment, the State alleged "the maximum is $10,000 for each act of violation" and that it was "neither requesting the assessment by this Court of penalties in excess of $10,000 per violation, nor is there a threat to [Seton] that [the State] will do so in the future." According to the State, these statements constituted judicial admissions that ended any remaining controversy over the penalty provision's interpretation. The allegations do not, however,

assert what the State construes to be an act of violation. Previously, the State had taken the position that each day the report remained unfiled constituted an act of violation for which a penalty could be assessed. We do not view the statements made in the State's counterclaim and summary judgment motion as constituting a judicial admission so as to conclusively establish that the Attorney General and the Council had misinterpreted the Code and taken wrongful action based on that interpretation. *See Starks v. Houston*, 448 S.W.2d 698, 699–700 (Tex.Civ.App.-Houston [1st Dist.] 1969, writ ref'd n.r.e.). The pleadings request an assessment of $10,000 per violation and the motion says the State seeks a maximum of that amount and is not seeking a greater amount. Read together, however, one could argue that this is only the maximum the State seeks in these instances. The State does not allege an admission that the statute provides only for $10,000 maximum per failure to file each annual report and no greater penalty can be assessed.

Thus, although Seton acknowledges that the immediate controversy forming the initial crux of its declaratory judgment action has ceased, it asserts that at the time of the district court's decision the threat remained that the Council could reinstate its policy of assessing an excessive penalty based on an erroneous construction of the

---

**4.** Section 402.004 provides that "an admission, agreement, or waiver made by the attorney general in an action or suit to which the state is a party does not prejudice the rights of the state." Tex. Gov't Code Ann. § 402.004 (West 1998).

**5.** In *State v. Keeton Packing Co.*, 487 S.W.2d 775, 780 (Tex.Civ.App.-Amarillo 1972, writ ref'd n.r.e.), the court applied the predecessor of section 402.004 of the Government Code. The court held that any admission in a letter by the Attorney General, to the effect that the State Highway Commission had no further

need for the excess land and that it was his opinion that consideration for the deed had failed, was not binding on the State: "Whether or not land is further needed by the State Highway Commission is left for the determination of that body and is not within the discretionary powers of the attorney general." *Id.* The Attorney General argues that because it is a party to the litigation, its admissions bind the parties. But the admission of one co-defendant does not bind another co-defendant.

statute.[6] This Court has held that under some circumstances a party is not required to wait until an agency attempts to enforce a rule against the party before seeking declaratory relief. *See Public Util. Comm'n of Texas v. City of Austin,* 728 S.W.2d 907, 910 (Tex.App.-Austin 1987, writ ref'd n.r.e.) (citing *State Bd. of Ins. v. Deffebach,* 631 S.W.2d 794, 797 (Tex.App.-Austin 1982, writ ref'd n.r.e.)). We believe a similar approach applies here. Despite the State's voluntary abandonment of its effort to collect a $153,000 penalty, the record shows that throughout the pendency of the case, the Council never took any extrajudicial action to abandon its earlier construction of the statute. Nor does the record establish that a complete resolution has been reached between Seton and the Council regarding the maximum civil penalties. *See Texas Educ. Agency v. Leeper,* 893 S.W.2d 432, 441 (Tex.1994) (holding case not moot where evidence does not adequately show plaintiffs and defendants agree on when home schooled children are exempt from compulsory attendance law).

This Court dealt with a similar situation in *Del Valle Indep. Sch. Dist. v. Lopez,* 863 S.W.2d 507 (Tex.App.-Austin 1993, writ denied). There, we held that the appellees' declaratory judgment action was not moot even though the appellant voluntarily abandoned an at-large electoral system after the appellees challenged its constitutionality. *Id.* at 511. We stated:

> Without a declaration by the court or an admission by Del Valle that the at-large system was unconstitutional, Del Valle was free to return to the at-large system. Therefore, because Del Valle refused to admit that the at-large system was unconstitutional, a declaration by the court that the system was unconstitutional was essential to Appellees' purpose: the elimination of the at-large system and the substitution of a single-member system.

*Id.* We conclude that the district court had jurisdiction to issue the declaratory judgment because the controversy was not moot and construction of the statute is a question of law. As in *Del Valle,* the challenged action is a stance on a question of law that has been voluntarily abandoned without any binding admission or extrajudicial action that would prevent a recurrence of the challenged action. *See Del Valle Indep. Sch. Dist.,* 863 S.W.2d at 511; *see also Reyna,* 944 S.W.2d at 662. The judgment declared that $10,000 is the maximum penalty that may be imposed under the statute or agency rule for failure to file a HEDIS report. The State had not expressly admitted this. Thus, we cannot say that the district court's construction of the statute had no practical effect or that it amounted to no more than an advisory opinion on a question that "would be purely academic" so that "we would have had a considerable amount of judicial wheel spinning for nothing." *Firemen's Ins.,* 442 S.W.2d at 333. And because neither the withdrawal letter by the Attorney General, the Council's counterclaim, nor the State's summary judgment motion effectively prevented the Council from threatening Seton with an excessive penalty in the future, we hold that the district court did not err in

---

**6.** In its response and cross motion for summary judgment, Seton admitted that the controversy giving rise to its declaratory judgment action had ended: "Plaintiff acknowledges that no current controversy exists between itself and the State on the issue of the maximum civil penalty for 1999 and 2000...." Seton argues, however, that it fears the Council will "in the future attempt to assess penalties in excess of the maximum allowed by the regulation" because the Council "remains free to interpret the statute differently and to seek penalties of more than $10,000 in the future."

issuing the declaratory judgment.[7]

### Sovereign Immunity

 The State alternatively contends that Seton's declaratory judgment action is barred by sovereign immunity. According to the State, because neither the APA nor the UDJA by their express terms waives the sovereign immunity of the State and its agencies, Seton is prohibited from bringing a cause of action against the Council or the Attorney General. We disagree. State agencies enjoy immunity from suit under the doctrine of sovereign immunity. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). However, the UDJA waives this immunity when a party seeks a court's construction of a statute or rule.

> According to the Supreme Court:
>
> The DJA expressly provides that persons may challenge ordinances or statutes, and that governmental entities must be joined or notified. Governmental entities joined as parties may be bound by a court's declaration on their ordinances or statutes. The Act thus contemplates that governmental entities may be—indeed, must be—joined in suits to construe their legislative pronouncements. These provisions provide the context for the Act's authorization, in § 37.009, of attorney fee awards. We conclude that by authorizing declaratory judgment actions to construe the legislative enactments of governmental entities and authorizing awards of attorney fees, the DJA necessarily waives governmental immunity for such awards.

*Leeper*, 893 S.W.2d at 446; *see also City of LaPorte v. Barfield*, 898 S.W.2d 288, 297 (Tex.1995); *Texas Workers' Comp. Comm'n v. Texas Builders Ins. Co.*, 994

S.W.2d 902, 909 (Tex.App.-Austin 1999, pet. denied). Seton's action sought a declaration that $10,000 per report is the maximum civil penalty that may be assessed under the Code for failure to file a HEDIS annual report. Seton also sought to recover its attorney's fees and costs incurred in obtaining the requested relief. In any event, the Council counterclaimed against Seton for assessment of penalties under section 108.014(b) of the Code. In the course of that proceeding, Seton was entitled to seek the court's interpretation of the statute in question. Because Seton seeks construction of a statute, we overrule the State's first issue.

### Abuse of Discretion

 In its third issue, the State contends the district court erred in assessing against Seton only the minimum penalty of $1,000 for failure to file each of the 1999 and 2000 reports. The State argues that the district court abused its discretion because "Seton's violation was willfully and knowingly in contravention of the statute and agency rules. . . ." A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). This Court may not reverse for abuse of discretion merely because we disagree with the decision of the trial court. *Id.*

According to the State, the district court penalized Seton's "flagrant violation of the mandatory reporting requirements" with no more than a "mere slap on the hand," therefore defeating the "well-settled" principle that civil penalties are imposed as punishment rather than compensation to the injured party. In support of this prop-

---

7. In a sub-issue, the State contends that the district court abused its discretion in awarding attorney's fees to Seton when it lacked the power to grant declaratory relief. Because we hold that the district court had that power, we need not address this argument.

osition that the State characterizes as "well-established," we are directed to *Whorton v. Nevitt,* 42 S.W.2d 1056, 1057 (Tex.Civ.App.-Waco 1931, no writ.) ("The term [penalty] involves the idea of punishment."). We do not find this case to be particularly instructive; it involved only the question of whether an action to recover double the amount of usurious interest was an action for a debt or for a penalty. *See id.* It does not provide a rule or principle by which the district court was to be guided in assessing a penalty against Seton. Nor does section 108.014, by its terms, provide any guidance. It merely provides that a court is not to assess less than $1,000 or more than $10,000 per filing violation. The court has discretion to assess a penalty within the prescribed range of punishment. It *did* so. We are unwilling to say that the district court abused its discretion in assessing an amount within the range prescribed by the legislature.

Furthermore, the State's reliance on Seton's alleged willful and intentional violation is misplaced. Section 108.014(b) does not explicitly ascribe any culpable mental state as a factor to be considered by the court in assessing the penalty. However, the preceding provision does. Section 108.014(a) states: "A person who knowingly or negligently releases data in violation of this chapter is liable for a civil penalty of not more than $10,000." Tex. Health & Safety Code Ann. § 108.014(a). If the legislature intended a more severe punishment for a willful and knowing failure to supply the data in section 108.014(b), as the State suggests, it could expressly provide for that as it *did* in section 108.014(a). Thus, the district court need not base the assessment of a penalty on the willful intent with which Seton violated the Code. Rather, as Seton suggests, the district court may have been influenced by the State's earlier demand for an excessive penalty and by its refusal to accept Seton's

repeated offers to tender a statutory penalty. The record does not reflect that the district court clearly abused its discretion. We overrule the State's third issue.

### Permanent Injunction

■ The State contends in its second issue that the district court erred by denying the State's request for a permanent injunction in addition to civil penalties because the summary judgment evidence entitles it to judgment as a matter of law. The State sought summary judgment to permanently enjoin Seton from violating the Code by ordering it to submit HEDIS reports for the years 1999 and 2000 and each subsequent year thereafter.

■ The grant or refusal of a permanent injunction is ordinarily within the trial court's sound discretion. On appeal, review of the trial court's decision is limited to the question of whether the court's refusal to grant injunctive relief constituted a clear abuse of discretion. *South Texas College of Law v. Texas Higher Educ. Coordinating Bd.,* 40 S.W.3d 130, 139 (Tex. App.-Austin 2000, pet. denied); *Risk Managers Int'l, Inc. v. State,* 858 S.W.2d 567, 568–70 (Tex.App.-Austin 1993, writ denied); *Priest v. Texas Animal Health Comm'n,* 780 S.W.2d 874, 875 (Tex.App.-Dallas 1989, no writ). In this case, the standard of review becomes somewhat more complex because the State's request for injunctive relief was dismissed with prejudice pursuant to the district court's grant of Seton's cross motion for summary judgment and denial of the State's summary judgment motion. *See Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n,* 25 S.W.3d 845, 848 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). With the standards of review for injunctive relief and for summary judgment in mind, we must consider all the summary judgment evidence to determine whether the

trial court clearly abused its discretion by denying the permanent injunction.

On appeal, the State argues that the only question before this Court is whether the State established its right to injunctive relief. It contends that it did so because the APA expressly provides that a state agency may request the Attorney General to seek injunctive relief when it appears that a person is violating, failing, or refusing to comply with an agency rule. The State cites section 2001.202 of the Texas Government Code, which provides:

(a) The attorney general, on the request of a state agency to which it appears that a person is violating, about to violate, or failing or refusing to comply with a final order or decision or an agency rule, may bring an action in a district court authorized to exercise judicial review of the final order or decision or the rule to:

(1) enjoin or restrain the continuation or commencement of the violation; or

(2) compel compliance with the final order or decision or the rule.

(b) The action authorized by this section is in addition to any other remedy provided by law.

Tex. Gov't Code Ann. § 2001.202 (West 2000). The State argues that because the legislature did not explicitly limit the relief in chapter 108 of the Code to civil penalties, this Court "should assume that the legislature intended section 2001.202 to be applicable to proceedings under the Act." Seton argued in its response to the State's summary judgment motion that because the legislature provided a remedy in the form of a civil penalty and did not provide for injunctive relief in the Code, the civil penalty provided in section 108.014 constitutes an exclusive remedy for its failure to file.

We have not located a reported case that applies section 2001.202 of the APA to a situation where violation of the underlying regulatory statute expressly provides a civil penalty. It has been specifically determined that a "person who fails to supply available data under Sections 108.009 and 108.010 is liable for a civil penalty of not less than $1,000 or more than $10,000 for each act of violation." Tex. Health & Safety Code § 108.014(b).[8] Nowhere does the Code expressly grant the State authority to seek injunctive relief. Arguably, we may presume that the failure to provide for injunctive relief in the Code reflects a legislative purpose. *See City of Austin v. Quick*, 930 S.W.2d 678, 687 (Tex.App.-Austin 1996), *aff'd*, 7 S.W.3d 109 (Tex.1999). We cannot say that the punishment provided, without the added remedy of an injunction, completely frustrates legislative intent. These concerns should be properly addressed to the legislative branch.

Assuming the remedies are cumulative, however, the issue remains whether the State showed it was entitled to the additional relief as a matter of law so that by failing to order this relief the trial court clearly abused its discretion. The State does not suggest that section 2001.202 was meant to supplant the traditional elements of proof necessary to obtain injunctive relief; therefore, even if section 2001.202 allows for a permanent injunction in this case, we cannot say that the State established as a matter of law its entitlement to a permanent injunction.

---

**8.** The agency rule provides that "[f]ailure to timely report verified HEDIS data is punishable by a civil penalty of not less than $1,000 nor more than $10,000 for each violation as set forth in Health and Safety Code, § 108.014." 25 Tex. Admin. Code § 1301.35 (West 2002) (Texas Health Care Information Council, Health Care Information).

Ordinarily, a party requesting injunctive relief must show the existence of a wrongful act, the existence of imminent harm; the existence of irreparable injury; and the absence of an adequate remedy at law. *Jim Rutherford Inv.*, 25 S.W.3d at 849; *Priest*, 780 S.W.2d at 874. Generally, the purpose of injunctive relief is to halt wrongful acts that are threatened or in the course of accomplishment, rather than to grant relief against past actionable wrongs or to prevent the commission of wrongs not imminently threatened. *Texas Employment Comm'n v. Martinez*, 545 S.W.2d 876, 877 (Tex.Civ.App.-El Paso 1976, no writ). In support of its motion for summary judgment, the State submitted several affidavits, including one by the executive director of the Council, which showed that Seton was required to file an annual HEDIS report with the Council but failed to meet the reporting deadlines in 1999 and 2000, and offering estimated costs associated with compiling the report ranging from a low of $62,666 to a high of $700,000. In its response, Seton did not dispute these facts; rather, Seton argued in part that this evidence failed to prove irreparable harm to the State and failed to prove that the civil penalty did not constitute an adequate remedy at law.

On appeal, the State makes the same arguments. In effect, the State contends that because both forms of relief are authorized and may be ordered, the trial court clearly abused its discretion by not ordering them both. It relies primarily upon the argument that it costs less for Seton to pay the penalty than to file the report, thus additional punishment is justified. Even assuming the State's proof of possible comparative costs may be true, that does not prove the State must be granted injunctive relief or conclusively prove that the court had no discretion to refuse injunctive relief. The district court assessed a civil penalty against Seton as provided by statute for its failure to file HEDIS reports in 1999 and 2000. The penalty was within the range authorized by statute. Understandably, the State disagreed with the amount and wanted the additional relief it requested. However, we cannot say that the State has shown that the civil penalty ordered does not provide an adequate remedy at law or is inconsistent with legislative intent.

Only where the summary judgment evidence is such that it demonstrates that the denial of relief would be a clear abuse of discretion may a permanent mandatory injunction be entered in response to a summary judgment motion. Moreover, "an injunction will not lie to prevent an alleged threatened act, the commission of which is speculative and the injury from which is purely conjectural." *Markel v. World Flight, Inc.*, 938 S.W.2d 74, 80 (Tex. App.-San Antonio 1996, no writ). Summary judgment proof merely suggesting that Seton *may* year after year deliberately refuse to file the report and instead pay the fine because of a cost-benefit analysis does not constitute imminent harm, nor is it enough to prove as a matter of law that the State has suffered irreparable injury. Rather, the State's proof only shows that, except for Seton, all of the other HMOs filed HEDIS reports *despite* the costs and deadlines. Furthermore, given that the State can seek an assessment of a statutory penalty for Seton's possible future violations, we cannot say that the State has an inadequate legal remedy. The State's summary judgment evidence thus fails to prove that its right to the extraordinary remedy of a permanent mandatory injunction is so clear and compelling as to constitute an abuse of discretion on the part of the district court. We hold that the State failed to establish as a matter of law its entitlement to a permanent injunction, and therefore overrule the State's second issue.

***State's Attorney's Fees***

In its final issue, the State contends that the district court erred in failing to award its attorney's fees under the government code, section 402.006(c), which states: "In a case in which the state is entitled to recover a penalty or damages the attorney general is entitled, on behalf of the state, to reasonable attorney's fees and court costs." Tex. Gov't Code Ann. § 402.006(c) (West 1998). To pursue civil penalties under the Code, the State must institute legal action. Here, the State sought an assessment of the civil penalty against Seton by way of counterclaim, which the trial court dismissed with prejudice. Nevertheless, the district court assessed Seton $1,000 for failure to file each of the 1999 and 2000 reports. Looking at the plain language of the statute, we believe that the legislature provided for the recovery of attorney's fees any time the State recovers a penalty or tort damages, and we have so held. *See State v. Triax Oil & Gas, Inc.*, 966 S.W.2d 123, 127 (Tex. App.-Austin 1998, no pet.) (awarding attorney's fees under section 402.006 where State recovered civil penalty); *see also Merchants Fast Motor Lines, Inc. v. State*, 917 S.W.2d 518, 524 (Tex.App.-Waco 1996, writ denied) (awarding attorney's fees under section 402.006 where State recovered tort damages).

Seton argues that, despite the clear directive of section 402.006, the State should be precluded from an award of attorney's fees because in this instance the "uncontroverted summary judgment evidence conclusively established that suit was not necessary to recover a civil penalty." Although this may be true, this contention is not dispositive because Seton offers no legal grounds as its support. An appellee's brief must conform to the requirements of rule 38.1 of the Texas Rules of Appellate Procedure, including rule 38.1(h). Tex.R.App. P. 38.2(a)(1); 38.1(h). Seton also suggests that the district court could not award reasonable attorney's fees because the State's summary judgment evidence did not segregate the amount spent exclusively in seeking the civil penalty. We reject this argument on the grounds that section 402.006 and the cases interpreting it do not require this segregation. The State recovered a civil penalty from Seton and, by statute, is entitled to attorney's fees. Because the record does not make clear to this Court the basis for the district court's failure to award attorney's fees to the State, the issue is remanded to the district court for the limited purpose of considering the State's request for reasonable attorney's fees and court costs under section 402.006 of the government code.

## CONCLUSION

We hold the district court did not err in granting Seton's declaratory judgment claim and in denying the State's request for injunctive relief. We also hold that the district court did not abuse its discretion in assessing the minimum statutory penalty against Seton for its failure to file the HEDIS reports but that the district court did err in not properly considering attorney's fees for the State's recovery of the penalty under section 402.006 of the government code. Accordingly, we affirm the district court's declaration that $10,000 is the maximum penalty allowed for failure to file an annual HEDIS report; we affirm the portion of the judgment granting Seton's summary judgment and dismissing the State's permanent injunction counterclaim; we affirm the assessment of $1,000 against Seton for each unfiled HEDIS report; we remand the issue of the State's entitlement to reasonable attorney's fees to the district court for consideration of same in accordance with this opinion.

Justice PATTERSON concurs.

Dissenting Opinion by Justice Puryear.

DAVID PURYEAR, Justice, dissenting.

I concur with the majority opinion, except with respect to the issue of the permanent injunction; specifically, regarding the 1999 and 2000 HEDIS reports, I believe that a continuing violation of the law by Seton establishes, as a matter of law, the basis for the issuance of the injunction. Therefore, I respectfully dissent to that portion of the majority opinion.

As noted by the majority, the grant or refusal of a permanent injunction is ordinarily within the trial court's sound discretion, and on appeal, review of the trial court's action is limited to whether the action constituted a clear abuse of discretion. *Risk Managers Int'l, Inc. v. State,* 858 S.W.2d 567, 568–70 (Tex.App.-Austin 1993, writ denied); *Priest v. Texas Animal Health Comm'n,* 780 S.W.2d 874, 875 (Tex. App.-Dallas 1989, no writ). However, where the facts conclusively show that a party is violating the substantive law, the trial court should enjoin the violation, and there is no discretion. *See Priest,* 780 S.W.2d at 876 (citing *City of Houston v. Memorial Bend Util. Co.,* 331 S.W.2d 418, 422 (Tex.Civ.App.-Houston 1960, writ ref'd n.r.e.)).

The obvious question, of course, is whether authority exists for the court to issue the injunction under these facts. The majority questions the use of section 2001.202 of the Texas Government Code because section 108.014 of the Texas Health and Safety Code does not specifically grant the State the authority to seek injunctive relief. *See* Tex. Gov't Code Ann. § 2001.202 (West 2000); Tex. Health & Safety Code Ann. § 108.014 (West 2001). However, section 2001.202 specifically declares that injunctive relief may be sought *in addition to* any other remedy provided by law. *See* Tex. Gov't Code Ann. § 2001.202.

The majority goes on to say that legislative intent is not necessarily frustrated by denying the use of section 2001.202 to enjoin a continuing violation. *Id.* However, the result of our decision today is that those obligated to comply with Chapter 108 may disregard its mandates with impunity, knowing that a nominal fine is all that awaits them. It is obvious that a total frustration of the legislative intent results when access to the injunctive relief offered by section 2001.202 of the Government Code is unavailable to require compliance with sections 108.009 and 108.010. *See* Tex. Health & Safety Code Ann. §§ 108.009, 108.010.

The legislature provided that the governor, the legislature, and the public has a right to access the HEDIS reports. *See* Tex. Health & Safety Code Ann. §§ 108.001, 108.011. If Seton is allowed to pay a nominal fine in lieu of producing the HEDIS reports, the intended recipients will be forever denied access to these reports. Surely the legislature, in enacting sections 108.009 and 108.010 of the Health and Safety Code, did not intend that result.

As the majority correctly points out, a party requesting injunctive relief must show a wrongful act, imminent harm, irreparable injury, and the absence of an adequate remedy at law. But the majority mistakenly concludes that the State has not established every element. They overlook the fact that Seton's failure to file the delinquent reports constitutes an ongoing violation of law. By enacting legislation requiring HEDIS reports to be produced annually, the legislature obviously declared the information contained therein sufficiently important to be available to the public. A nominal fine, which costs Seton less than the cost of compliance, cannot be

considered an adequate remedy if it enables Seton to forever avoid the obligation to produce the reports. The purpose of the fine is to punish a health care provider for not producing the report timely. However, payment of the fine should not permanently exempt the health care provider from the application of the law. That certainly would frustrate the legislative intent. Injunctive relief should be available to require Seton to produce the 1999 and 2000 HEDIS reports, as mandated by sections 108.009 and 108.010 of the Health and Safety Code. Therefore, I respectfully dissent.