TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-07-00700-CV




David L. Lakey, M.D., in his Official Capacity as Commissioner of the Texas Department
of State Health Services, Appellant


v.


Floyd Taylor, by his next friend, Melissa Shearer; Gabriela Hernandez, by her next friend,
Melissa Shearer; Zachary Ridgeway, by his next friend, Martin J. Cirkiel; Stanley
Jackson, by his next friend, Martin J. Cirkiel; Eric Hubert, by his next friend, Martin J.
Cirkiel; Dennis Rainford, by his next friend, Melissa Shearer; Lidia Huerta, by her next
friend, Martin J. Cirkiel; Calvin Bearden, by his next friend, Martin J. Cirkiel; Rosie
King, by her next friend, Martin J. Cirkiel, and Advocacy, Incorporated, Appellees




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT

NO. D-1-GN-07-000837, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING



O P I N I O N


 Advocacy, Incorporated and the individual appellees, persons with mental illness
who have been found incompetent to stand trial, sought declaratory and injunctive relief against
the Commissioner of the Texas Department of State Health Services, alleging that the
Department's policy and practice regarding the provision of competency-restoration treatment to
persons who have been found incompetent to stand trial is unconstitutional. (1) In this
interlocutory appeal, the Commissioner contends that the trial court erred in denying his plea to
the jurisdiction, filed on the grounds of sovereign immunity and standing. Because we have
determined that sovereign immunity has been waived and that Advocacy and the individual
appellees have standing to bring their underlying claims, we affirm the trial court's order
denying the plea to the jurisdiction. (2)


BACKGROUND

 The constitutional claim in this case involves the treatment of criminal defendants
who have been found incompetent to stand trial. If such a defendant is found ineligible for bail,
the trial court is required to commit the defendant to a mental health facility or residential care
facility for a period of up to 120 days "for further examination and treatment toward the specific
objective of attaining competence to stand trial." See Tex. Code Crim. Proc. art. 46B.073(b)
(West Supp. 2008). If the defendant is charged with a violent offense other than simple assault,
the defendant must be committed to the maximum security unit of a mental-health facility. Id.
art. 46B.073(c). 

 The Department operates the state mental health hospital system for both forensic
commitments--commitments resulting from a criminal defendant being found incompetent to
stand trial--and civil commitments. (3) The legislature appropriates funds to the Department to
operate a designated number of state hospital beds, and it is within the Department's discretion
to determine how many of the total state hospital beds will be used for forensic commitments
and how many will be used for civil commitments. (4) 

 In 2005, the number of persons requiring forensic commitments increased
dramatically, exceeding the number of state hospital beds that had been designated for forensic
commitments. To address this problem, the Department created a "clearinghouse list," which
actually consists of two separate waiting lists: the state hospital waiting list for defendants who
have not been charged with a violent crime, and the maximum security hospital waiting list for
defendants charged with violent crimes. The clearinghouse list makes all forensic commitments
to state hospitals contingent on the availability of space. Individuals on the clearinghouse list
must remain in county jail until a state hospital bed is available before they can be transferred to
begin competency-restoration treatment. 

 In September 2007, the Department revised its clearinghouse policy to cap the
number of forensic commitment beds based on the State Hospital Allocation Methodology
(SHAM). Under the SHAM, each county mental health authority has a certain amount of
allocated funding, representing a certain number of state hospital beds. If a county overspends
its allocated funds, an administrative hold will prevent the county from committing more
criminal defendants until the county no longer exceeds its allocated funding.

 Advocacy, a group created to advocate on behalf of individuals with mental
illness, (5) and a number of individuals who were required to wait in a county jail until a bed was
available at a forensic-commitment facility, brought suit against the Commissioner, seeking
declaratory and injunctive relief. Advocacy asserted that the Department's "delay in accepting
prompt custody and providing competency restoration treatment" forces persons awaiting
forensic commitments to "spend months improperly incarcerated in jails, without treatment," and
that this delay violates the due-course-of-law provision of the Texas Constitution. Advocacy
requested an injunction requiring the Department to provide competency restoration treatment
within a reasonable period of time, not to exceed three days, and a declaration that the
Department's current policies, procedures, and practices regarding the clearinghouse list violate
the Texas Constitution.

 The Commissioner filed a plea to the jurisdiction, asserting that neither the
individual appellees (6) nor Advocacy had standing to bring their claims and that sovereign
immunity barred suit. The trial court denied the plea to the jurisdiction and this appeal followed.


STANDARD OF REVIEW

 Because this is an appeal from a plea to the jurisdiction, "we will review the face
of appellants' pleadings to determine whether they show a lack of jurisdiction or whether the
pleadings, if liberally construed, favored jurisdiction." Atmos Energy Corp. v. Abbott, 127
S.W.3d 852, 855 (Tex. App.--Austin 2004, no pet.). Whether a trial court has subject-matter
jurisdiction is a question of law we review de novo. Westbrook v. Penley, 231 S.W.3d 389, 394
(Tex. 2007). If the pleadings do not affirmatively demonstrate the trial court's jurisdiction but
do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading
sufficiency and the plaintiffs should be afforded the opportunity to amend. Texas Dep't of Parks
& Wildlife v. Miranda, 133 S.W.3d 217, 226-27 (Tex. 2004). If the pleadings affirmatively
negate jurisdiction, then a plea to the jurisdiction may be granted without allowing an
opportunity to amend. Id. at 227. Unless a pled jurisdictional fact is challenged and
conclusively negated, it must be taken as true for purposes of determining subject-matter
jurisdiction. City of Austin v. Leggett, 257 S.W.3d 456, 462 (Tex. App.--Austin 2008, pet.
denied). In reviewing a plea to the jurisdiction, an appellate court does not look to the merits of
the case but considers only the pleadings and evidence relevant to the jurisdictional inquiry. 
Miranda, 133 S.W.3d at 227. 

 

DISCUSSION

Mootness

 As a preliminary matter, the Commissioner argues that this litigation has been
rendered moot by recent policy changes and legislative amendments regarding forensic
commitments. The mootness doctrine limits courts to deciding cases in which an actual
controversy exists. Camarena v. Texas Employment Comm'n, 754 S.W.2d 149, 151 (Tex. 1988). 
A case becomes moot if a controversy ceases to exist between the parties at any stage of the
legal proceedings, including the appeal. In re Kellogg Brown & Root, 166 S.W.3d 732, 737
(Tex. 2005). 

 During the 2007 legislative session, the legislature set aside additional funding for
pilot programs aimed at reducing the number of offenses caused by persons with mental illness
and amended article 46B of the code of criminal procedure by, among other things, clarifying
situations in which outpatient services could be used in lieu of a forensic commitment,
shortening time frames regarding competency hearings, and removing the requirement that
defendants charged with simple assaults must be admitted to maximum-security hospitals. See
Act of May 17, 2007, 80th Leg., R.S., ch. 1307, 2007 Tex. Gen. Laws 4385, 4385-95. Also in
2007, the Department revised its policies so that it no longer limited the number of available
state hospital beds that could be used for forensic commitments, as opposed to civil
commitments.

 The Commissioner claims that as a result of these legislative and administrative
changes, the waiting period for criminal defendants slated for forensic commitment has dropped
significantly, and that therefore this appeal is now moot. We disagree. While the Commissioner
asserts that the number of criminal defendants on the clearinghouse list has been reduced, he
does not contend that it has been eliminated. At the hearing on the plea to the jurisdiction,
Kenny Dudley, director of the state hospital system, testified that after the 2007 legislative
amendments, the clearinghouse list contained "approximately 200" criminal defendants and was
"pretty stable." Dudley further testified that at that time, the average wait for criminal
defendants waiting to get into a maximum-security hospital was approximately six months, and
that the average wait for the remaining state hospitals was "a little less, but probably pretty close
to six months." 

 Furthermore, the Department may not moot this appeal by voluntarily abandoning
the policy at issue "without any binding admission or extrajudicial action that would prevent a
recurrence of the challenged action." Texas Health Care Info. Council v. Seton Health Plan,
Inc., 94 S.W.3d 841, 849 (Tex. App.--Austin 2002, pet. denied); see also Bexar Metro. Water
Dist. v. City of Bulverde, 234 S.W.3d 126, 131 (Tex. App.--Austin 2007, no pet.). Where a
policy is challenged as unconstitutional, voluntary cessation of such policy, without an
admission or judicial determination regarding its constitutionality, is not sufficient to render the
constitutional challenge moot. Del Valle Indep. Sch. Dist. v. Lopez, 863 S.W.2d 507, 511 (Tex.
App.--Austin 1993, writ denied). As a result, we hold that neither the 2007 legislative
amendments nor the Department's policy changes have rendered this appeal moot.

 Having resolved the mootness issue in Advocacy's favor, we now turn to the
Commissioner's contention that the trial court should have granted its plea to the jurisdiction on
the issues of standing and sovereign immunity.


Individual Standing

 The Commissioner argues that because the individual appellees are no longer on
the clearinghouse list and have been transferred to state hospitals for competency-restoration
treatment, their claims are moot and they do not have standing to bring this appeal. While the
individual appellees admit that they are no longer on the Department's clearinghouse list, they
claim to fall within an exception to the mootness doctrine for claims that are capable of
repetition, yet evading review. See Blum v. Lanier, 997 S.W.2d 259, 264 (Tex. 1999). This
exception applies to claims where (1) the challenged act is of such short duration that the
appellant cannot obtain review before the issue becomes moot and (2) there is a reasonable
expectation that the same action will occur again if the issue is not considered. Id.

 The Commissioner concedes that the challenged act in this case evades review,
stating, "Without doubt, the individual plaintiffs' claims meet the first prong of this test." The
Commissioner argues, however, that the individual appellees cannot meet the capable-of-repetition requirement because the possibility that an individual appellee may be charged with
another crime and again be confined to await a forensic commitment is too speculative to confer
standing. See Williams v. Lara, 52 S.W.3d 171, 184-85 (Tex. 2001) (holding that former
inmates did not have standing to bring constitutional challenge regarding prison policies because
court could not assume that plaintiffs would commit another crime that would lead to
incarceration).

 We assume that an average criminal defendant will prevent their own recidivism,
as they are required by law to do. See O'Shea v. Littleton, 414 U.S. 488, 497 (1974) ("We
assume that respondents will conduct their activities within the law and so avoid prosecution and
conviction as well as exposure to the challenged course of conduct said to be followed by
petitioners."); Williams, 52 S.W.3d at 185 (refusing to "assume that [plaintiffs] will commit
another crime"). However, unlike the plaintiffs in Williams or O'Shea, the individual appellees
are not ordinary criminal defendants, but individuals suffering from mental illness who have
been found incompetent to stand trial, and who, in the case of two of the individual appellees,
have been arrested, found incompetent, and ordered to a state hospital for competency-restoration treatment multiple times in the past. Furthermore, criminal defendants waiting on the
Department's clearinghouse list have not yet been convicted of a crime. Thus, even if we were
to assume that the individual appellees had the ability to prevent their own recidivism, it does not
necessarily follow that they would never again find themselves charged with a crime and in need
of competency-restoration treatment. In light of these circumstances, we hold that the individual
appellees have shown that there is a reasonable expectation and demonstrated probability that
they will again be arrested, found incompetent to stand trial, and placed on the Department's
clearinghouse list. As a result, the individual appellees have standing to bring their claim under
the capable-of-repetition-yet-evading-review exception to the mootness doctrine.



Associational Standing

 The Commissioner further contends that Advocacy lacks standing to bring this
appeal, while Advocacy claims that it has both organizational and associational standing. (7) In
order to establish standing to bring suit on behalf of its constituents, an association must show
that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it
seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor
the relief requested requires the participation of individual members in the lawsuit." Hunt v.
Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977); see also Texas Ass'n of Bus.
v. Texas Air Control Bd., 852 S.W.2d 440, 447 (Tex. 1993) (adopting Hunt test for associational
standing).

 Advocacy is a protection and advocacy organization created by federal law under
the Protection and Advocacy for Mentally Ill Individuals (PAMII) Act, 42 U.S.C. §§ 10801-10851 (West 2005), and authorized to "pursue administrative, legal, and other appropriate
remedies to ensure the protection of individuals with mental illness who are receiving care or
treatment" in Texas. Id. § 10805(a)(1)(B). For purposes of the Hunt associational-standing test,
constituents of an organization created under the PAMII Act have been considered by federal
courts to be the functional equivalent of members. See Oregon Advocacy Ctr. v. Mink, 322 F.3d
1101, 1110 (9th Cir. 2003); Doe v. Stincer, 175 F.3d 879, 886 (11th Cir. 1999). The individual
appellees fall within Advocacy's constituency by virtue of having been examined by a qualified
mental health professional and found to be unable to communicate with defense counsel or
understand the criminal proceedings against them. See 42 U.S.C. § 10802(4) (defining
"individual with a mental illness" to include individuals with "a significant mental illness or
emotional impairment, as determined by a mental health professional"); Tex. Code Crim. Proc.
Ann. arts. 46B.022, .024 (West 2006). Because we have already determined that the individual
appellees, members of Advocacy's constituency, have standing to sue in their own right, it
necessarily follows that the first prong of the associational-standing test is satisfied.

 To satisfy the second prong of the test, Advocacy must show that the interests it
seeks to protect in bringing this suit are germane to its associational purpose. The purpose of
Advocacy's enabling statute is "to ensure that the rights of individuals with mental illness are
protected" and to establish organizations, like Advocacy, that will, among other things, "protect
and advocate the rights of such individuals through activities to ensure the enforcement of the
Constitution and Federal and State statutes." 42 U.S.C. § 10801(b). Under federal law,
Advocacy is authorized to "pursue administrative, legal, and other appropriate remedies to
ensure the protection of individuals with mental illness who are receiving care or treatment in the
State." Id. § 10805(a)(1)(B). 

 According to the Commissioner, the interests of the individual appellees and
other criminal defendants awaiting forensic commitment while confined in county jails are not
germane to Advocacy's purpose because these individuals are not "receiving care or treatment in
the State." Id. However, the federal regulations related to the PAMII Act define "care or
treatment" as:


services provided to prevent, identify, reduce or stabilize mental illness or
emotional impairment such as mental health screening, evaluation, counseling,
biomedical, behavioral and psychotherapies, supportive or other adjunctive
therapies, medication supervision, special education and rehabilitation, even if
only "as needed" or under a contractual arrangement.


42 C.F.R. § 51.2. Under this broad definition, a criminal defendant who has been provided with
a mental health screening or evaluation is considered to be receiving care or treatment in the
State. Texas county jails are required to conduct a mental health screening on each detainee
upon admission. See 37 Tex. Admin. Code § 273.5(b) (requiring mental health screening to be
"completed immediately on all inmates admitted"); see also id. § 273.1 (requiring owner or
operator of county jail to "provide medical, mental, and dental services" in accordance with an
approved health services plan) (emphasis added). While county jails do not provide the type of
competence-restoration treatment that individuals awaiting forensic commitment require, they do
provide a minimal level of "care or treatment" that is sufficient to give Advocacy authority to
sue on behalf of individuals confined therein after being found incompetent to stand trial. As a
result, Advocacy meets the second prong of the associational-standing test.

 In order to meet the third and final prong of the associational-standing test,
Advocacy must show that neither the claim asserted nor the relief requested requires the
participation of individual members in the lawsuit. See Hunt, 432 U.S. at 343. "If in a proper
case the association seeks a declaration, injunction, or some other form of prospective relief, it
can reasonably be supposed that the remedy, if granted, will inure to the benefit of those
members of the association actually injured." Id. Where an association "seeks only
prospective relief, raises only issues of law, and need not prove the individual circumstances of
its members to obtain that relief," it satisfies the third prong of the associational-standing test. 
Texas Ass'n of Bus., 852 S.W.2d at 448. 

 In the present case, Advocacy seeks only declaratory and injunctive relief to
eliminate the delay between an incompetency finding and the initiation of competency-restoration treatment. (8) This remedy, if granted, will inure to the benefit of individuals who, as
previously discussed, are members of Advocacy's constituency by virtue of having been found
incompetent to stand trial and forced to remain confined in county jails. Advocacy does not seek
damages on behalf of its individual members, but only prospective relief. Furthermore,
Advocacy, in alleging that an incompetent criminal defendant's constitutional rights are violated
any time they are confined in county jail for over three days before receiving competency-restoration treatment, brings a facial constitutional challenge that does not require proof of any
individual appellee's circumstances. As a result, we hold that Advocacy meets the third prong of
the test, and therefore has associational standing to bring this suit.


Sovereign Immunity

 The Commissioner argues that even if Advocacy and the individual appellees
have standing, their suit is barred by sovereign immunity. Absent an express waiver of
sovereign immunity, the State, its agencies, and its officials are generally immune from suit. 
State v. Holland, 221 S.W.3d 639, 643 (Tex. 2007). However, sovereign immunity does not
shield a governmental entity from a suit for equitable relief for a violation of constitutional
rights. See City of Beaumont v. Bouillion, 896 S.W.2d 143, 148-49 (Tex. 1995) ("[S]uits for
equitable remedies for violation of constitutional rights are not prohibited."); see also Tex.
Const. art. 1, § 29 ("[W]e declare that everything in this 'Bill of Rights' is excepted out of the
general powers of government, and shall forever remain inviolate, and all laws contrary thereto,
or to the following provisions, shall be void."). The Commissioner contends that sovereign
immunity bars the present case because Advocacy has failed to make allegations that would, if
true, constitute the violation of any recognized constitutional right. 

 Sovereign immunity from suit is properly asserted in a plea to the jurisdiction.
Miranda, 133 S.W.3d at 225-26. In reviewing a plea to the jurisdiction on the grounds of
sovereign immunity, a court may not weigh the merits of the claim, County of Cameron v.
Brown, 80 S.W.3d 549, 555 (Tex. 2002), but may consider the plaintiffs' pleadings and the
evidence pertinent to the jurisdictional inquiry in order to determine whether the particular facts
of the case come within the scope of the alleged waiver. State Dep't of Crim. Justice v. Miller,
51 S.W.3d 583, 587 (Tex. 2001) (holding that "mere reference to the Tort Claims Act" without
evidence that claims actually implicate Tort Claims Act is insufficient to establish jurisdiction). 

 In attempting to show that Advocacy's claim does not fall within the scope of a
constitutional violation, the Commissioner argues that the due-course-of-law provision of the
Texas Constitution does not give a forensic detainee the right to be transferred from county jail
to competency-restoration treatment within three days. To decide this issue would require us to
venture too far into the merits of the underlying case, and we decline to do so. See Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000) (holding that plea to jurisdiction does not
"authorize an inquiry so far into the substance of the claims presented that plaintiffs are required
to put on their case simply to establish jurisdiction"). We will instead look to the substance of
the pleadings, construed liberally in favor of the plaintiffs, see Miranda, 133 S.W.3d at 226, to
determine whether Advocacy has alleged a constitutional claim.

 In support of its due-course-of-law claim, Advocacy asserts that persons who
have been found incompetent to stand trial, but who have not been convicted of any crime, have
a liberty interest in their freedom from incarceration and in timely receiving restorative
treatment, citing Mink, 322 F.3d at 1121-22 (holding that refusal to admit incapacitated criminal
defendants into competency-restoration treatment in timely manner violates substantive due
process) and Jackson v. Indiana, 406 U.S. 715, 738 (1972) (holding that, to avoid violating due
process, criminal defendant confined after being found incompetent to stand trial "cannot be held
more than the reasonable period of time necessary" to determine whether he can regain
competency). The Department, while arguing that Mink has been superceded, agrees in its reply
brief that under Jackson, forensic detainees have a liberty interest in not being placed in forensic
detention indefinitely. As Advocacy points out in its brief, the director of the state hospital
system testified at the plea to the jurisdiction that under the Department's SHAM policy, persons
from counties that have been placed on an administrative hold could wait in jail indefinitely for a
forensic commitment. In light of the authorities cited by Advocacy, as well as forensic
detainees' recognized liberty interest 

in not being incarcerated indefinitely, we cannot say that Advocacy's claims are so far afield of
any recognizable constitutional right as to fall outside the scope of a waiver of sovereign
immunity.

 Without determining whether Advocacy's claims will ultimately succeed, we hold
that the allegations are sufficient to invoke the waiver of sovereign immunity for constitutional
claims. See Bouillon, 896 S.W.2d at 148-49. Accordingly, the trial court did not err in denying
the Commissioner's plea to the jurisdiction on the basis of sovereign immunity. (9)

CONCLUSION

 Because we have determined that the trial court has subject-matter jurisdiction
over this suit, we affirm the trial court's order denying the Commissioner's plea to the
jurisdiction.


__________________________________________

 Diane M. Henson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: November 6, 2008
1. Except where it is necessary to talk about the individual appellees separately, we will refer
to the appellees collectively as "Advocacy."
2. The trial court's order did grant the plea to the jurisdiction as to the Commissioner's claim
that Advocacy was not entitled to attorney's fees. Advocacy did not brief the issue of attorney's fees
on appeal and we express no opinion regarding that particular portion of the trial court's order.
3. While not at issue in the present case, commitments of an individual acquitted of a crime
by reason of insanity are also considered forensic commitments.
4. In the 2007 legislative session, the legislature appropriated sufficient funds to allow the
Department to operate a total of 2,477 state hospital beds for both forensic and civil commitments. 

5. Advocacy is a protection and advocacy organization created under the Protection and
Advocacy for Mentally Ill Individuals (PAMII) Act, 42 U.S.C. §§ 10801-10851 (West 2005), and
authorized to "pursue administrative, legal, and other appropriate remedies to ensure the protection
of individuals with mental illness who are receiving care or treatment in the State." Id. §
10805(a)(1)(B). 
6. While a number of individual plaintiffs have been substituted, for simplicity we will refer
to the individual plaintiffs at various stages of this litigation, when necessary, as the individual
appellees.
7. In light of our holding that Advocacy has associational standing, we express no opinion
regarding whether Advocacy has organizational standing to bring this appeal.
8. As previously noted, Advocacy's request for attorney's fees was dismissed and Advocacy
has not appealed that dismissal.
9. The Commissioner also argues that even if Advocacy had raised a constitutional claim,
injunctive relief would be improper in this case because it would interfere with the imposition of
criminal penalties, citing State v. Morales, 869 S.W.2d 941, 947 (Tex. 1994) (holding that equity
court could not declare criminal statute unconstitutional and enjoin its enforcement). However,
unlike the plaintiffs in Morales, Advocacy does not seek to enjoin the enforcement of any penal
statute, but rather the Department's policy and practice regarding the transportation and treatment
of criminal defendants who have been found incompetent to stand trial. The fact that Advocacy's
claims relate to the constitutional rights of criminal defendants does not place them outside a civil
court's equity jurisdiction. See id. at 945-46; Passel v. Fort Worth Indep. Sch. Dist., 440 S.W.2d
61, 64 (Tex. 1969) (injunctive relief was within equity jurisdiction where plaintiffs did not seek to
prevent enforcement of criminal statute, but rather enforcement of agency regulation implementing
that statute).